[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
December 27, 2006
THOMAS K. KAHN
CLERK

No. 06-12263
Non-Argument Calendar

_____

D. C. Docket No. 03-00068-CR-CG-001

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

MARLO DEVAN FERGUSON,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Alabama

_____

**(December 27, 2006)**

Before ANDERSON, BARKETT and HULL, Circuit Judges.

PER CURIAM:

After a jury trial, Marlo Devan Ferguson appeals his conviction and 120-month sentence for being a felon in possession of a firearm. After review, we

affirm.

## I. BACKGROUND

Ferguson, a convicted felon, was charged in a single-count indictment with being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). Ferguson pled not guilty, and proceeded to trial.[1] We first recount the trial evidence.

On October 26, 2001, at approximately 2:00 a.m., Officer Melvin Jones was on routine patrol in his car when he observed a silver sport utility vehicle ("SUV") parked on a service road. Officer Jones saw Ferguson standing in front of the SUV. Ferguson attempted to conceal himself by moving around to the other side of the SUV. Finding Ferguson's behavior suspicious, Officer Jones turned his car around to investigate.

Officer Jones met Ferguson's SUV as it was leaving the area. The two vehicles stopped side-by-side, so that the driver's side doors were next to each other. Ferguson immediately opened his car door and said, "What's up? What's up, Officer?" in a manner that alarmed Jones. Officer Jones exited his patrol car, focusing on Ferguson's hands. Ferguson's left hand was on the steering wheel, but his right hand was down on his right side, between the center console and the

---

[1]There were two mistrials. The trial discussed in this opinion was Ferguson's third trial, at which he was convicted and from which he appeals.

2

driver's seat. Officer Jones told Ferguson to place both hands on the steering wheel. Ferguson did not comply until Jones instructed him three times.

As Officer Jones drew closer, he noticed on the floorboard of the SUV, near the brake pedal, "a small baggy" of what appeared to be cocaine. Jones radioed for backup. In the meantime, Ferguson's right hand again dropped back between the driver's seat and the center console. Jones twice ordered Ferguson to exit the SUV, which he finally did. Jones patted Ferguson down and placed him in the back of his patrol car. Jones's backup, Officer Jason Naylor, arrived and the two officers retrieved the baggy from the SUV floorboard.

Officer Jones returned to his patrol car to place Ferguson under arrest, while Officer Naylor inventoried the SUV. Naylor called Jones back to the SUV because he "found something." Jones returned, sat in the SUV driver's seat, and saw "what appeared to be the butt of a pistol in between the driver's seat and the center console." Jones pulled the gun out and verified that it was a pistol. The gun was not loaded, and electrical tape was wrapped around its handle. Jones and Naylor also located a marijuana cigarette in the SUV.

At trial and over defense objection, the district court permitted the government to use two photographs as demonstrative aids, but did not permit the photographs to be sent out with the jury as evidence. The photographs depicted the

3

pistol jammed down between the driver's seat and the center console.[2]  The SUV in the photographs had a different color interior than Ferguson's.  The photographs were taken in daylight, rather than at night (when Ferguson was arrested).  The district court expressly clarified to the jury that the photographs were "not of the actual vehicle or what was happening that night."

According to Officer Naylor, the firearm in the photographs was in "approximately the same location" as Ferguson's.  Naylor acknowledged, however, that Ferguson's firearm had been "back maybe just a touch, maybe just a hair back . . . . an inch or two, you know" to the right of where it was depicted in the photographs.

Ferguson's sister, Jamika Ferguson, and his girlfriend, Paula Massey, also testified.  The SUV belonged to Jamika, but her children's father (Robert Bradley), Massey, and the defendant Ferguson all frequently drove the SUV.  Jamika had seen Bradley with a gun, and Bradley usually carried a firearm.  In fact, Bradley shot Ferguson a few months after Ferguson's arrest in this case.  Jamika had never seen Ferguson with a gun.  Jamika could not explain, however, why she initially told investigators that no one besides herself and Ferguson drove the SUV.

Massey likewise testified that she, Ferguson, Jamika, and Bradley all drove

---

[2]Neither Officer Jones nor Officer Naylor took or assisted with preparation of the photographs.

4

the SUV. On the day of his arrest, Ferguson picked up the SUV from Jamika at around noon, and Massey and Ferguson went out that night in the SUV. Ferguson brought Massey home between 11:00 p.m. and 12:00 a.m., and Ferguson went out again. Massey did not remember seeing a gun or cocaine in the SUV.

The jury convicted Ferguson. At sentencing, Ferguson's base offense level was 24, pursuant to U.S.S.G. § 2K2.1(a)(2). The district court applied a 4-level enhancement, pursuant to U.S.S.G. § 2K2.1(b)(5), finding that Ferguson possessed the firearm "in connection with" another felony (possession of cocaine and marijuana).[3] With an adjusted offense level of 28 and a criminal history category of IV, Ferguson's advisory guidelines range was 110 to 137 months' imprisonment. The statutory maximum sentence for Ferguson's § 922(g) conviction was 120 months' imprisonment. The district court sentenced Ferguson to 120 months' imprisonment.

## II. DISCUSSION

### A. The photographs

Ferguson argues that the district court abused its discretion by allowing the government to show the photographs to the jury, because the photographs did not accurately depict the SUV on the night of his arrest and were more prejudicial than

---

[3]Drug possession charges were filed against Ferguson in state court. Unlawful possession of a controlled substance is a felony in Alabama. Ala. Code § 13A-12-212.

probative.[4]  This situation is different from most we have addressed because the photographs were used only as demonstrative aids and were not admitted into evidence or allowed into jury deliberations.  Cf. United States v. Brown, 441 F.3d 1330, 1362 (11th Cir. 2006) (considering the admissibility of color photographs from a homicide scene).

More importantly, the officers identified the photographs as similar to the actual crime scene.  See United States v. Myers, 972 F.2d 1566, 1579 (11th Cir. 1992).[5]  Any inconsistencies between the photographs and the actual crime scene were addressed by the officers' testimony concerning the differences between the interior color of the SUV and the lighting conditions at the time of the arrest.  Although Jones testified that the photographs accurately represented the location of the firearm as it appeared that evening, Naylor's testimony that the firearm in the photographs was in a slightly different position put the jury on notice that the photographs may not have precisely captured the firearm's exact location.  Moreover, the district court specifically addressed the accuracy of the photographs

---

[4]We review a district court's evidentiary rulings for abuse of discretion.  See United States v. Pendas-Martinez, 845 F.2d 938, 941 (11th Cir. 1988).

[5]In Myers, this Court held that the district court did not abuse its discretion by allowing into evidence a photograph of a bunk bed in a jail cell that was similar, but not identical, to the bunk bed in which the defendant police officer's victim was located at the time of the officer's alleged attack on the victim.  Another police officer testified that the photograph "fairly and accurately" depicted the bunk in which the victim was located, except that it was on the opposite side of the room.  Myers, 972 F.2d at 1579.

by stating before the jury that the photographs were "not of the actual vehicle or what was happening that night."

Given that the photographs were admitted only as demonstrative aids, were not introduced into evidence or allowed into the jury room, and were identified by both officers as essentially accurate portrayals of the SUV on the night of Ferguson's arrest, we cannot say that the district court abused its discretion.[6]

## B.    Jury instruction

Next, Ferguson argues that the district court abused its discretion by refusing to give a jury instruction that a defendant's "mere presence" near an object is not sufficient to establish possession.[7]  However, the district court's jury instructions included an accurate statement of the law regarding actual and constructive possession, and Ferguson's requested instruction was adequately covered by the charge.  Specifically, the district court instructed the jury that a person may have

---

[6]Ferguson relies on United States v. Garcia, 916 F.2d 710 (4th Cir. 1990), but Garcia is distinguishable.  The photographs here, unlike the videotape in Garcia, were "'nearly the same in substantial particulars as to afford a fair comparison'" for the jury.  United States v. Gaskell, 985 F.2d 1056, 1060 (11th Cir. 1993) (citation omitted).  Moreover, in this case, the photographs did not depict anything irrelevant or contrary to the evidence, like the gold coins in Garcia or the defendant and his family going to church in Garcia.

[7]"We review a district court's refusal to give a requested jury instruction for abuse of discretion."  United States v. Klopf, 423 F.3d 1228, 1241 (11th Cir. 2005).  A district court abuses its discretion in refusing to give a requested jury instruction if: (1) the instruction was a substantively correct statement of the law; (2) the instruction was not adequately covered by the jury instructions given; and (3) the defendant's ability to present an effective defense was substantially impaired by the district court's denial of the instruction.  Id.

actual or constructive possession of an object, and explained the difference between the two, stating: "[a] person who is not in actual possession, but who has both the power and the intention to later take control over something, either alone or together with someone else, is in constructive possession of it." The district court further instructed the jury that in order to have "knowingly" possessed a firearm, Ferguson must have possessed the firearm "voluntarily and intentionally." The jury could not have attributed possession to Ferguson through his mere presence alone, because mere presence would not establish voluntarily or intentional possession. Therefore, Ferguson's requested instruction was adequately covered by the instructions given to the jury. See United States v. Rojas, 537 F.2d 216, 219-20 (5th Cir. 1976).[8]

## C.    Sufficiency of the evidence

Ferguson also claims the trial evidence was insufficient to establish that he constructively possessed the firearm.[9] We disagree.

Taking the evidence in the light most favorable to the government, the firearm was directly next to, and in view of, Ferguson as he drove the SUV.

---

[8]In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), we adopted as binding precedent all decisions of the former Fifth Circuit that were rendered prior to October 1, 1981.

[9]"We review a defendant's challenge to the sufficiency of the evidence de novo, taking all reasonable inferences in the government's favor." United States v. York, 428 F.3d 1325, 1330 n.6 (11th Cir. 2005), cert. denied, __U.S. __, 126 S. Ct. 2948 (2006).

Ferguson repeatedly dropped his right hand near the location where the gun was found and was hesitant to obey Officer Jones's commands to keep both hands on the wheel. The jury reasonably could have inferred from the location of the firearm and Ferguson's continued hand movements toward the center console that Ferguson had both the power and intention to later take control over the firearm, and that Ferguson voluntarily and intentionally had the firearm in the SUV with him. Moreover, Massey testified that she did not remember seeing a gun or cocaine in the SUV when she was riding in the SUV just a few hours prior to Ferguson's arrest. Although both Massey and Jamika testified that several other people frequently drove the SUV, Massey's uncontroverted testimony—that there was no gun or cocaine in the SUV two to three hours prior to Ferguson's arrest—also supports the jury's finding that the gun belonged to Ferguson. The jury reasonably could have concluded that only Ferguson operated the SUV in the short interval between the time he dropped Massey off and the time of his arrest. Accordingly, we must reject Ferguson's sufficiency-of-the-evidence argument.[10]

---

[10]Ferguson relies heavily on United States v. Pedro, 999 F.2d 497 (11th Cir. 1993), but that case is distinguishable. In Pedro, there was insufficient evidence to establish Pedro's knowledge of the firearm because the firearm was in a suitcase carried by Pedro's co-defendant. Pedro, 999 F.2d at 500-02. The government presented no evidence that Pedro knew of the gun; Pedro was not carrying the suitcase that held the gun; and there was no evidence that Pedro made any movements towards the suitcase. Id. Here, by contrast, the gun was located directly next to Ferguson and was readily accessible to Ferguson, and Ferguson made several movements towards the gun when encountered by Officer Jones.

9

**D.     Section 2K2.1(b)(5) enhancement**

Ferguson next argues that the district court incorrectly found that he possessed the firearm "in connection with" his felony cocaine and marijuana possession, and improperly imposed a 4-level sentencing enhancement pursuant to § 2K2.1(b)(5).[11]

Section 2K2.1(b)(5) does not define the phrase "in connection with." However, this Court has read the "in connection with" language expansively, and concluded that "the firearm does not have to facilitate the underlying offense." United States v. Rhind, 289 F.3d at 695 (11th Cir. 2002) (concluding that defendants possessed firearms "in connection with" counterfeiting offense where two unloaded guns were placed in the back seat of a vehicle with counterfeit money and the guns reasonably could have been present to protect the counterfeit money).

In this case, the baggy of cocaine was at Ferguson's feet and in his view, and the firearm was directly next to Ferguson and the cocaine. Ferguson made multiple movements towards the firearm. Thus, the district court did not commit clear error in finding that Ferguson possessed the firearm to protect his drugs or himself while

---

[11]We review a district court's application and interpretation of the sentencing guidelines de novo, but review its findings of fact for clear error. United States v. Rhind, 289 F.3d 690 (11th Cir. 2002).

10

possessing the drugs.  See Rhind, 289 F.3d at 695; see also United States v. Gainey, 111 F.3d 834, 837 (11th Cir. 1997) (determining that a defendant with heroin around his neck and a firearm in his pants pocket possessed the firearm "in connection with" the drugs); United States v. Hardin, 139 F.3d 813, 815 n.3 (11th Cir. 1998) (affirming without discussion district court's § 2K2.1(b)(5) enhancement for defendant's possession of gun "in connection with" defendant's possession of methamphetamine).

Ferguson also contends that the § 2K2.1(b)(5) enhancement was improper because it punishes him twice for the same conduct or harm.  Ferguson relies on United States v. Brown, 332 F.3d 1341 (11th Cir. 2003), in which this Court concluded that a § 2K2.1(b)(5) enhancement could not apply where the defendant's underlying convictions were for (1) being a felon in possession of a firearm, in violation of § 922(g), and (2) using and carrying firearms during and in relation to a drug trafficking offense, in violation of 18 U.S.C. § 924(c).  Brown, 332 F.3d at 1342, 1346.  However, the defendant in Brown had two underlying convictions, one of which was a § 924(c) offense for carrying a firearm in relation to a drug trafficking offense.  The sentencing guidelines specifically prohibit applying the § 2K2.1(b)(5) enhancement in that § 924(c) situation.  Brown, 332 F.3d at 1345; see also U.S.S.G. § 2K2.4 cmt. n.4.

11

In contrast, Ferguson was charged only with the § 922(g) offense, which had no drug component, and as such, the 4-level enhancement for carrying a firearm in connection with a felony (his state drug offense) did not punish twice the same wrong.

## E.    Reasonableness of Ferguson's sentence

Finally, Ferguson contends that his 120-month sentence is unreasonable, in violation of United States v. Booker, 543 U.S. 220, 125 S. Ct. 738 (2005), and that the district court failed to meaningfully consider the 18 U.S.C. § 3553(a) sentencing factors.[12]  We disagree.

A district court need not discuss each § 3553(a) factor.  United States v. Scott, 426 F.3d 1324, 1329 (11th Cir. 2005).  If the district court correctly calculated the defendant's advisory guidelines range, an acknowledgment that the district court considered the defendant's sentencing arguments and the § 3553(a) factors is sufficient.  See United States v. Talley, 431 F.3d 784, 786 (11th Cir. 2005).  Moreover, the burden of establishing unreasonableness lies with the party challenging the sentence.  Id. at 788.

Here, the district court correctly determined that Ferguson's total offense

---

[12]After Booker, we review sentences for reasonableness.  United States v. Talley, 431 F.3d 784, 785 (11th Cir. 2005).  District courts must correctly calculate the advisory guidelines range and consider the sentencing factors set forth in § 3553(a).  Id. at 786.

level was 28 and his criminal history category was IV, which resulted in an advisory guidelines range of 110 to 137 months' imprisonment. The district court imposed a 120-month sentence, which was within that range, albeit also the statutory maximum. Although a sentence within the advisory guidelines range is not per se reasonable, we ordinarily expect such a sentence to be reasonable. Id. at 788. Additionally, the district court stated that it "considered the statutory purposes of sentencing and the sentencing guidelines," and it found the statutory maximum guidelines-range sentence "appropriate . . . [and] otherwise reasonable" because Ferguson previously had been convicted of "carjacking and possession of a gun in connection with that violent felony, [as well as] drug convictions." The district court also specifically rejected Ferguson's claim that he should receive a below-advisory guidelines sentence because his gun was unloaded, stating: "an unloaded gun will scare somebody just as bad as a loaded gun will." The district court complied with Talley and Booker, and Ferguson has not shown that his 120-month sentence was unreasonable.

## III. CONCLUSION

For the foregoing reasons, we affirm Ferguson's conviction and sentence.

**AFFIRMED.**

13