304 Ga. 61
FINAL COPY

S18A0841.  RICKMAN v. THE STATE.

HINES, Chief Justice.

Following the denial of his motion for new trial, as amended, Stephon D. Rickman appeals his convictions for felony murder and possession of a firearm during the commission of a crime in connection with the fatal shooting of Travious D. Floyd.  Rickman challenges the trial court's admission of certain photographic evidence and the effectiveness of his trial counsel.  Finding the challenges to be unavailing, we affirm.[1]

---

[1] The crimes occurred on May 24, 2015.  On October 9, 2015, a Floyd County grand jury indicted Rickman, along with Joseph E. Williams, for malice murder, felony murder while in the commission of aggravated assault and aggravated battery, nine counts of aggravated assault with a deadly weapon, aggravated battery, criminal damage to property in the first degree, and possession of a firearm during the commission of a crime.  Rickman was tried separately before a jury April 4-7, 2016.  One count of aggravated assault was nolle prossed, and Rickman was found not guilty of malice murder, six counts of aggravated assault, and criminal damage to property, but guilty of all other charges.  On April 7, 2016, Rickman was sentenced to life in prison for felony murder and a consecutive term of five years in prison for the firearm possession charge.  The trial court ruled that the remaining counts, aggravated battery and two counts of aggravated assault, merged with the felony murder for the purpose of sentencing, and those rulings have not been challenged. See *Dixon v. State*, 302 Ga. 691, 697-698 (4) (808 SE2d 696) (2017).  Trial counsel filed a motion for new trial on Rickman's behalf on April 13, 2016, and the motion was amended by new counsel on June 2, 2017.  The motion for new trial, as amended, was denied on December

1. Construed to support the verdicts, the evidence showed the following. On the evening of May 23, 2015, Travious Floyd, his brothers Orlando Floyd and Courtland Floyd, and their cousin went to a nightclub to hear a rapper named Jamarco Gibbs and known as Bandit Gang Marco. When a fight broke out, security officers required everyone to leave the club and escorted Gibbs and his entourage, including Rickman and Joseph E. Williams, to their vehicles. As Travious and his brothers walked to their car and then turned back to look for their cousin, they passed several vehicles waiting at a red light. The first vehicle was a Mustang driven by Gibbs with three passengers, and the second was a Challenger driven by Williams with Rickman in the front passenger seat and another person in the back seat. Words were exchanged between the Floyds and the occupants of the vehicles. Gibbs and at least one of his passengers got out of the Mustang to confront the Floyds, and a fight began. Although neither the Floyds nor the Mustang's occupants were armed, both Rickman and Williams had a pistol. Each of them began firing from the Challenger. Rickman was leaning out of the passenger window, propped on the window with most of his

27, 2017. A notice of appeal was filed on January 11, 2018, and the case was docketed in this Court for the April 2018 term. The appeal was submitted for decision on the briefs.

body out of the vehicle, and braced against the top of the vehicle. He was in such a position as to enable him to shoot over the hood of the Challenger toward a group of people standing at the front driver's side of the Mustang, where a large area of blood was subsequently found at the beginning of a trail of blood. After firing his pistol, Rickman said, "I shot him in the butt." The only person injured by the gunfire was Travious, who collapsed at the end of the blood trail and later died of a gunshot wound to his neck. As the vehicles began to leave the scene at a high rate of speed, a security guard fired one shot in the air and another into the Mustang's back window. A firearms examiner testified that one of the shell casings found at the scene was fired from a .380 caliber Bersa pistol that belonged to Rickman's uncle. Rickman testified that, after seeing Williams shoot from the driver's side window twice, he picked up his uncle's gun and fired a warning shot up in the air because he was scared.

Rickman does not contest the legal sufficiency of the evidence supporting his convictions. Nevertheless, as is this Court's practice in murder cases, we have reviewed the record and conclude that, when viewed in the light most favorable to the verdicts, the evidence presented at trial was sufficient to authorize a rational trier of fact to find Rickman guilty beyond a reasonable

doubt of the crimes for which he was convicted. See *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

2. Rickman contends that the trial court erred in admitting photographs that show a re-creation by police of the crime scene. Officers borrowed a Mustang and a Challenger similar to those driven by Gibbs and Williams at the time of the shooting, closed the roads near the actual location of the shooting, and, early one morning while it was still dark, positioned the borrowed vehicles where video footage showed that the actual vehicles had stopped. One officer testified that the purpose of the reenactment was to help determine where the vehicles and people involved were in relation to each other, what the line of sight was, and what directions the bullets may have traveled. After numerous photographs were taken of the vehicles at the scene and daylight arrived, one officer of the same height as Travious was positioned in an area near the driver's side of the Mustang where a blood spot showed that he had been shot. Five photographs show the officer posing as Travious. Based on the location where the .380 caliber shell casing was discovered, three of those five photographs also show another officer posing as a shooter standing beside the passenger side of the Challenger, and the other two show the view of someone exiting the

4

passenger side of the Challenger. The State emphasized that those five photographs showed only possible locations from which the .380 shell casing could have come, and this was confirmed by the testifying officer. A sixth photograph shows the view that a seated driver of the Challenger would have had.

It appears that Rickman is challenging the admission of all six of those photographs, but he objected at trial only to the three with an officer posing as the shooter. The use of the other three photographs "is therefore reviewable only for plain error. See OCGA § 24-1-103 (d)." *Lupoe v. State*, 300 Ga. 233, 250 (17) (794 SE2d 67) (2016). The trial court admitted all of the photographic evidence, including the six photographs now challenged, and instructed the jury that the photographs were based on theories as to how the shooting could have happened, that some of the photographs may depict something different from what the evidence shows, and that the jury was not to accept a mere theory of the police over the evidence. Relying primarily on *Pickren v. State*, 269 Ga. 453, 455-456 (2) (500 SE2d 566) (1998), and *Eiland v. State*, 130 Ga. App. 428, 429 (1) (203 SE2d 619) (1973), Rickman argues on appeal that the photographic evidence was improper because it was substantially different from the facts of

5

the case, was not a fair and accurate representation of the events sought to be depicted, and as a result was prejudicial and misleading to the jury.

Demonstrative evidence, which includes reenactments and pictures used to aid the trier of fact in understanding the issues and facts at trial, "is irrelevant and inadmissible unless accompanied by witness testimony that shows that the demonstrative evidence is substantially similar to the actual conditions or events at issue." *Smith v. State*, 299 Ga. 424, 434 (3) (b) (788 SE2d 433) (2016). The admission of demonstrative evidence in this case is not controlled by cases decided under the old Evidence Code, such as *Pickren* and *Eiland*, because this case was tried under the new Evidence Code. See id. at 436 (3) (c).

> Demonstrative evidence implicates several provisions of the new Evidence Code. It must be relevant, see OCGA § 24-4-401, and it may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence, see OCGA § 24-4-403.

Id. at 434-435 (3) (b). In addition, under OCGA § 24-6-611 (a), the mode and order of presenting demonstrative evidence is subject to the reasonable control of the trial court so as to make the presentation effective for the ascertainment of the truth and to avoid needless consumption of time. See id. at 435 (3) (b).

6

These provisions of the new Evidence Code, OCGA §§ 24-4-401, 24-4-403, and 24-6-611 (a), mirror Federal Rules of Evidence 401, 403, and 611 (a). See *Smith*, 299 Ga. at 435 (3) (b), n. 8; *Davis v. State*, 299 Ga. 180, 189 (2) (b) (787 SE2d 221) (2016); *Flading v. State*, 327 Ga. App. 346, 351 (2) (759 SE2d 67) (2014). "Because these provisions of our new Evidence Code were borrowed from the Federal Rules of Evidence, our interpretation of these provisions is guided by the decisions of the federal appellate courts, especially the United States Supreme Court and the Eleventh Circuit." *Brewner v. State*, 302 Ga. 6, 13 (III) (804 SE2d 94) (2017).

As we indicated in *Smith*, the general foundational requirement for demonstrative or experimental evidence under the Federal Rules of Evidence is a showing not that the conditions of the demonstration are identical to the actual event at issue, but that they are "'so nearly the same in substantial particulars as to afford a fair comparison in respect to the particular issue to which the test is directed.'" 299 Ga. at 435 (3) (b) (quoting *United States v. Gaskell*, 985 F2d 1056, 1060 (11th Cir. 1993)). See also 5 Christopher B. Mueller et al., Federal Evidence § 9:27 (4th ed. updated June 2017). And "[t]he trial court has broad discretion to determine whether the substantial similarity requirement has been

7

satisfied."[2]  5 Mueller et al., supra, § 9:27.  See also *Smith*, 299 Ga. at 435 (3)

(b); *Gaskell*, 985 F2d at 1060.  The United States Court of Appeals for the

Eleventh Circuit has allowed the use of demonstrative photographs of a re-

created crime scene within the trial court's discretion when officers identified

the photographs as similar to the actual crime scene, they addressed

inconsistencies between the photographs and the actual crime scene, the jury

was put on notice that the photographs may not have precisely captured a

firearm's exact location, and the trial court told the jury that the photographs did

not show the actual vehicle and what was happening that night.  *United States*

*v. Ferguson*, 212 Fed. Appx. 873, 876 (11th Cir. 2006).

In the case now before us, the photographs were taken at the actual

location of the shooting using the same types of vehicles in the same positions

as the actual vehicles.  The fact that the particular photographs at issue were

---

[2] The law set forth by state courts appears to be comparable.  In most jurisdictions, "[p]hotographs or videotapes reproducing the scene of the crime or reenacting the crime may be admissible within the discretion of the court if they fairly portray the evidence presented in the case."  3 Barbara E. Bergman et al., Wharton's Criminal Evidence § 16:28 (15th ed. updated November 2017).  "The current trend would appear to be to permit photos of disputed reconstructions."  2 McCormick on Evidence § 215 (Kenneth S. Broun & Robert P. Mosteller eds., 7th ed. updated June 2016).  "Generally most questions about the 'staging' of the scene that is photographed or videotaped go to weight rather than admissibility."  3 Bergman et al., supra, § 16:28.

taken in daylight was not material to the determination of the possible positions of vehicles, persons, and the murder weapon. And the daylight condition for the photographs was mitigated by the opportunity to compare them with other photographs of the reenactment that were taken in the dark with the area illuminated only by street lights. The position of one officer in five of the photographs was based on substantial evidence of the victim's actual location. The other officer, who appeared in three of those photographs, was positioned near the shooter's approximate location as shown by eyewitness testimony and the location where the .380 caliber shell casing was discovered. Both the officer who testified and the trial court made it clear that the photographs did not show what actually happened, but only a theory as to how it could have happened. Considering the record as a whole, we conclude that the trial court's admission of the six reenactment photographs about which Rickman complains did not constitute an abuse of discretion. See *Smith*, 299 Ga. at 436 (3) (c); *Ferguson*, 212 Fed. Appx. at 876. "There was therefore no error, plain or otherwise." *Lupoe*, 300 Ga. at 250 (17).

3. Rickman also contends that his trial counsel was ineffective in having Rickman testify even though counsel knew or should have known that Rickman

would testify in a way that undermined the defense strategy. In his original motion for new trial, Rickman did not raise any ineffective assistance claim, and his amended motion for new trial included only "'a blank [ineffectiveness] claim with absolutely no specificity.'"[3] *Jones v. State*, 294 Ga. 501, 503 (2) (755 SE2d 131) (2014) (citation omitted). See also *Hundley v. State*, 295 Ga. 703, 704 (2) (763 SE2d 717) (2014). Rickman submitted only one brief in support of his motion for new trial as amended, and that brief addressed only the photographs discussed above in Division 2, and not any ineffectiveness claim whatsoever. At the hearing on the motion for new trial, appellate counsel questioned trial counsel and Rickman about the defense strategy and the decision for Rickman to testify, but appellate counsel argued only the claim relating to the photographs, not ineffective assistance. The trial court entered an order summarily denying the motion for new trial "for reasons stated on the record," and the hearing transcript shows that court orally addressed the photographs, but not Rickman's ineffectiveness claim.

---

[3] In its entirety, the claim read as follows: "Trial counsel was ineffective, and Defendant was unduly prejudiced by such ineffectiveness."

Because appellate counsel never asserted a specific ineffectiveness claim in the motion for new trial as amended, at the hearing thereon, or even in any brief, Rickman waived the issue of ineffective assistance of trial counsel. See *Moore v. State*, 279 Ga. 45, 47-48 (8) (609 SE2d 340) (2005); *Martinez v. State*, 303 Ga. App. 166, 175 (4) (d) (692 SE2d 766) (2010). Moreover, although a trial court may under some circumstances allow a motion for new trial to be amended implicitly by treating a claim as if it had been raised in the motion, the trial court's failure to address any ineffectiveness claim in its ruling on the motion for new trial indicates an absence of any such amendment, and this means that, even though there was questioning on the issue at the hearing on the motion, "there is no ruling on the issue for this Court to review." *Cowart v. State*, 294 Ga. 333, 338 (3) (751 SE2d 399) (2013) (holding that, because the trial court did not rule on an ineffective assistance claim raised by appellant in a supplemental brief but not raised in his motion for new trial, the trial court had not implicitly allowed that brief to amend the motion for new trial, resulting in the ineffective assistance claim being procedurally barred).

Judgments affirmed. All the Justices concur.

Decided June 18, 2018.

Murder. Floyd Superior Court. Before Judge Colston.

Jason A. Fisher, for appellant.

Leigh E. Patterson, District Attorney, Kayleigh A. Carter, Assistant District Attorney; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Meghan H. Hill, Assistant Attorney General, for appellee.