**THIRD DIVISION**
**DOYLE, P. J.,**
**REESE and BROWN, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**February 11, 2022**

# In the Court of Appeals of Georgia

A21A1708. BELL v. THE STATE.

BROWN, Judge.

Julia Bell appeals from her convictions of four counts of elder exploitation.[1] She contends that insufficient evidence supports Count 7 of the indictment and that her trial counsel provided ineffective assistance by: (a) failing to object to and eliciting testimony regarding missing items (jewelry and medical equipment) not included in the indictment, (b) failing to object to a lay witness providing opinion testimony about the genuineness of handwriting, and (c) failing to challenge the competency of the victim to testify. For the reasons explained below, we affirm.

In reviewing the sufficiency of the evidence,

---

[1] The jury found Bell not guilty of three counts of elder exploitation.

the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. Once a defendant has been found guilty of the crime charged, the factfinder's role as weigher of the evidence is preserved through a legal conclusion that upon judicial review *all of the evidence* is to be considered in the light most favorable to the prosecution.

(Citations and footnote omitted; emphasis in original.) *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979).

So viewed, the record shows that Bell worked as a live-in caretaker for the victim, a woman in her late seventies who had suffered a stroke resulting in loss of movement on her right side and speech difficulty. The victim's son testified that she sometimes had difficulty "getting the right word to come out" and that while he had noticed "some issues" with her short-term memory, she was able to "form some" and her memory loss was not a daily issue. After her stroke, the victim continued to play bridge three times a week and win.

The owner of the care-giving company that employed Bell testified that his employees were forbidden to provide care to a client "on the side" without permission

from the owner, accept gifts over $50 or of a client's personal possessions, or obtain credit cards in their name attached to the account of a client. Bell never requested permission to obtain a credit card in her name on the victim's account. Employees, including Bell, were to be paid by the care-giving company, not the client.

When Bell first worked with the victim starting in October 2016, the victim's son paid the victim's bills through access to her accounts. In August 2017, the victim told her son that she would take over paying her bills. When Bell became the victim's caretaker, the victim's spending "went dramatically up." There were also "more" bills when her son no longer paid the bills. At the end of 2017, the victim's son learned that "Bell had charged several things to the credit card and also had gotten a credit card in her name." After taking control of the bills again, he discovered more questionable activity, and his sister contacted the police.

An investigator with the district attorney's office testified that she obtained the bank account records of Bell and the victim and examined them for connected, suspicious transactions. Based on an interview with the victim, the investigator identified numerous transactions in the victim's bank and credit card accounts at locations where the victim did not shop or for services that she did not use.

3

With regard to a Target check forming the basis for Count 7 of the indictment, the State presented evidence showing that the check was deposited into Bell's account on July 3, and that no cash withdrawal from Bell's account in the same amount took place between that date and July 20. Bell testified at trial that she tried to cash the check on the victim's behalf at the victim's bank, but the bank would not let her do so in the absence of the victim. She stated that she then took the check to her bank "and deposited it and gave [the victim] cash." While she initially testified that the victim endorsed the back of the check, she later gave less certain testimony, saying that she did not "think" she had signed the check on the victim's behalf.

The State subsequently charged Bell with seven counts of elder exploitation. The jury found her guilty of four counts (Counts 4-7). Three of these counts (Counts 4-6) included over 170 purchases totaling $18,750.62 on the victim's credit cards that were made for Bell's "profit and advantage." Examples of individual credit charges included: $235.60 at a jewelry store; $1,644.16 at an automobile body shop; and cash advances ranging from $200 to $600. The fourth count (Count 7) alleges that Bell exploited the victim by taking the Target check made payable to the victim in the amount of $328.86, forging the victim's signature on the back, and then depositing the check into Bell's bank account.

1. Bell contends that insufficient evidence supports her conviction of Count 7 of the indictment because the State failed to prove she forged the victim's signature on the check as alleged in the indictment. We disagree.

In Georgia, "[a]ny person who knowingly and willfully exploits a[n] . . . elder person . . . shall be guilty of a felony." OCGA § 16-5-102 (a). "'Exploit' means illegally or improperly using a disabled adult or elder person or that person's resources through undue influence, coercion, harassment, duress, deception, false representation, false pretense, abuse of access, or other similar means for one's own or another person's profit or advantage." OCGA § 16-5-100 (6). While Bell frames her enumeration of error in terms of the sufficiency of the evidence, in substance, it is an argument that there was a fatal variance between the indictment and the proof at trial. See *Martinez v. State*, 325 Ga. App. 267, 269 (1) (a) (750 SE2d 504) (2013) (noting "if the indictment sets out the offense as done in a particular way, the proof must show it so, or there will be a variance") (citation and punctuation omitted). Fatal variance arguments must be raised and ruled upon by the trial court in order to be considered on appeal. See *Brown v. State*, 320 Ga. App. 12, 13, n.4 (739 SE2d 32) (2013). As Bell failed to do so in this case, the fatal variance issue is waived. See

*Everhart v. State*, 307 Ga. 254, 262 (2) (a), n.7 (835 SE2d 192) (2019); *Hanson v. State*, 305 Ga. App. 900, 902 (2) (700 SE2d 896) (2010).

To the extent her brief asserts that the evidence presented by the State fails to sufficiently prove elder exploitation, we find that the State met its burden under the standard set forth in *Jackson*, 443 U. S. at 319 (III) (B). A rational trier of fact could have concluded from the evidence presented by the State that Bell knowingly and wilfully exploited the victim in connection with the Target check, particularly in light of the evidence that Bell deposited the check into her own bank account and did not make a cash withdrawal, even though she testified she gave cash to the victim.

2. Bell asserts that she received ineffective assistance of trial counsel.

> To prevail on a claim of ineffective assistance of counsel, [Bell] must show that trial counsel's performance was so deficient that it fell below an objective standard of reasonableness, and that counsel's deficient performance prejudiced the defense such that a reasonable probability exists that the trial results would have been different but for counsel's performance. *Strickland v. Washington*, 466 U. S. 668 (II) (104 SCt 2052, 80 LE2d 674) (1984).

*Bragg v. State*, 295 Ga. 676, 678 (4) (763 SE2d 476) (2014). "Trial tactics and strategy, no matter how mistaken in hindsight, are almost never adequate grounds for finding trial counsel ineffective unless they are so patently unreasonable that no

6

competent attorney would have chosen them." (Citation and punctuation omitted.) *Brown v. State*, 321 Ga. App. 765, 767 (1) (743 SE2d 452) (2013).

(a) Bell asserts that trial counsel should have objected to evidence regarding missing jewelry and medical equipment as the State did not bring charges in connection with these items. The record shows that the victim's daughter testified that she notified the police about missing jewelry and that she later found a missing ring. She also made a passing reference to Bell taking "a lot of medical equipment with her from the house." In the motion for new trial hearing, trial counsel testified that one of his theories of defense was that the daughter was not a credible witness and that her suspicions about the jewelry and medical equipment were not backed up by law enforcement. He chose not to object to the testimony because it gave him an opportunity to question her on cross-examination and show that she "threw around accusations all the time." As the trial court concluded, trial counsel made a reasonable, tactical decision not to object to the testimony about other unindicted incidents. See *Ray v. State*, 345 Ga. App. 522, 526 (3) (c) (812 SE2d 97) (2018) (holding trial counsel made a reasonable strategic decision not to object to evidence that counsel believed showed a false accusation), overruled on other grounds, *State v. Burns*, 306 Ga. 117, 124 (2) (829 SE2d 367) (2019).

7

(b) Bell maintains that trial counsel provided ineffective assistance of counsel by failing to object to alleged improper opinion testimony by the district attorney's investigator during cross-examination. The record shows that the testimony at issue occurred after the investigator acknowledged that the victim would sometimes ask her boyfriend to complete checks for her to then sign. When counsel asserted that this was the same procedure used by Bell that formed the basis for charges against her, the investigator agreed, but explained:

> There were some checks that were — that appeared to be written out but filled out, like the memo line and the amount filled out in [Bell]'s handwriting, and then signed by [the victim]. But [the victim], when I asked her about them, did not know who those people were who the checks were being paid to. And she described a situation once where [Bell] filled out a check and shoved it in her face and said sign this.

> Also there were checks that were written in [Bell]'s handwriting where she signed the [victim's first and last name] or the [victim's first initial and last name], but it was all in the same handwriting. So [the victim] can sign her own checks. I don't know why she would ask someone else to sign her checks.

Bell asserts that "[t]he investigator's testimony that checks signed with the name of [the victim] in [Bell's] handwriting" was lay opinion testimony not authorized by OCGA § 24-7-701 (a) (3). OCGA § 24-7-701 (a) provides:

> If the witness is not testifying as an expert, the witness's testimony in the form of opinions or inferences shall be limited to those opinions or inferences which are:
>
> (1) Rationally based on the perception of the witness;
>
> (2) Helpful to a clear understanding of the witness's testimony or the determination of a fact in issue; and
>
> (3) Not based on scientific, technical, or other specialized knowledge within the scope of Code Section 24-7-702.

In Bell's view, the investigator gave opinion testimony "regarding scientific, technical, or other specialized knowledge" without being qualified as an expert witness. Even if we were to assume, without deciding, that any such objection would have been meritorious, Bell cannot demonstrate a reasonable probability of a different outcome but for counsel's failure to object. The only check-related charge for which the jury found Bell guilty was the check issued to the victim by a third-party, not a check drawn on the victim's account and completed by another. As the testimony at

9

issue related to checks written and drawn on the victim's account, Bell cannot meet her burden of showing prejudice. See *Griffin v. State*, 331 Ga. App. 550, 555-556 (2) (b) (769 SE2d 514) (2015) (finding appellant could not demonstrate prejudice flowing from alleged trial counsel error related to charge for which the jury returned a not guilty verdict).

(c) Bell contends that trial counsel should have challenged the competency of the victim to testify based on the victim's "failed memory and inability to properly communicate." While Bell did not assert this ground of ineffective assistance in her written motion for new trial, as amended, she did raise it in the hearing on her motion for new trial. In its written order denying the motion for new trial, the trial court did not address this particular ground of ineffective assistance. Instead, it addressed each specific ground raised in the written motion for new trial, as amended, and its order concludes by stating: "Therefore, for the reasons set forth, the Defendant's MOTION FOR NEW TRIAL and AMENDED MOTION FOR NEW TRIAL are hereby DENIED." Based upon the particular language and structure of the trial court's order in this case, we cannot construe it as a ruling on the ground of ineffective assistance raised for the first time in the motion for new trial hearing. In the absence of such a ruling, this ground of ineffective assistance of counsel has not been preserved for our

review. See *Lewis v. State*, 312 Ga. 537, 541 (2), n.4 (863 SE2d 65) (2021) (holding ineffective assistance claim waived when trial court did not rule on issue raised for first time in the hearing on the motion for new trial and not in a written motion); *Rickman v. State*, 304 Ga. 61, 66 (3) (816 SE2d 4) (2018) ("a trial court may under some circumstances allow a motion for new trial to be amended implicitly by treating a claim as if it had been raised in the motion," but a trial court's failure to rule indicates an absence of such amendment).

*Judgment affirmed. Doyle, P. J., and Reese, J., concur.*

11