304 Ga. 455
FINAL COPY

S18A0797. WILLIAMS v. THE STATE.

BLACKWELL, Justice.

Joseph Emani Williams was tried by a Floyd County jury and convicted of murder and other crimes in connection with the shooting of Travious Floyd. Williams appeals, contending that he was denied the effective assistance of counsel when his lawyer failed to request a jury charge on the defense of habitation and that the trial court plainly erred with respect to two jury instructions. After reviewing the record and briefs, we find no merit to Williams's claims, and we affirm his convictions.[1]

---

[1] Floyd was killed on May 24, 2015. On October 9, 2015, a Floyd County grand jury indicted Williams and Stephon Rickman, charging each with murder with malice aforethought, murder while in the commission of aggravated assault and aggravated battery, nine counts of aggravated assault with a deadly weapon, aggravated battery, criminal damage to property in the first degree, and the unlawful possession of a firearm during the commission of a crime. Before either man was tried, one count of aggravated assault was nolle prossed. Rickman was tried first and was found guilty of felony murder, several counts of aggravated assault, and the possession charge. His convictions were recently affirmed in Rickman v. State, 304 Ga. 61 (816 SE2d 4) (2018). Williams's trial began on July 12, 2016, and Rickman was called as a witness by the State but invoked his right to silence and refused to testify. On July 15, 2016, the jury found Williams not guilty of malice murder, aggravated battery, and five counts of aggravated assault, but it found him guilty of the remaining charges. On August 18, 2016, Williams was sentenced to imprisonment for life for felony

1. Viewed in the light most favorable to the verdicts, the evidence presented at Williams's trial was consistent with the evidence presented at the earlier trial of Stephon Rickman, which was summarized in Rickman v. State, 304 Ga. 61 (816 SE2d 4) (2018):

On the evening of May 23, 2015, Travious Floyd, his brothers Orlando Floyd and Courtland Floyd, and their cousin went to a nightclub to hear a rapper named Jamarco Gibbs and known as Bandit Gang Marco. When a fight broke out, security officers required everyone to leave the club and escorted Gibbs and his entourage, including Rickman and . . . Williams, to their vehicles. As Travious and his brothers walked to their car and then turned back to look for their cousin [at around 1:00 a.m. on May 24], they passed several vehicles waiting at a red light. The first vehicle was a Mustang driven by Gibbs with three passengers, and the second was a Challenger driven by Williams with Rickman in the front passenger seat and another person in the back seat. Words were exchanged between the Floyds and the occupants of the vehicles. Gibbs and at least one of his passengers got out of the Mustang to

murder, imprisonment for concurrent terms of twenty years for the aggravated assaults upon Courtland Floyd and Orlando Floyd, imprisonment for a concurrent term of five years for criminal damage to property, and imprisonment for a consecutive term of five years for the unlawful possession of a firearm during the commission of a felony. The trial court merged the remaining aggravated assault into the felony murder. See Malcolm v. State, 263 Ga. 369, 373 (5) (434 SE2d 479) (1993). On August 25, 2016, Williams filed a timely motion for new trial, which he amended on September 16, 2016, March 15, 2017, and August 4, 2017. The trial court denied Williams's motion on December 1, 2017, and Williams filed a timely notice of appeal on December 18, 2017. Williams's appeal was docketed in this Court for the April 2018 term and submitted for decision on the briefs.

2

confront the Floyds, and a fight began. Although neither the Floyds nor the Mustang's occupants were armed, both Rickman and Williams had a pistol. Each of them began firing from the Challenger. Rickman was leaning out of the passenger window, propped on the window with most of his body out of the vehicle, and braced against the top of the vehicle. He was in such a position as to enable him to shoot over the hood of the Challenger toward a group of people standing at the front driver's side of the Mustang, where a large area of blood was subsequently found at the beginning of a trail of blood. After firing his pistol, Rickman said, "I shot him in the butt." The only person injured by the gunfire was Travious, who collapsed at the end of the blood trail and later died of a gunshot wound to his neck.

Id. at 61-62 (1).

Williams testified at his trial, where he admitted firing his gun, but he said that he only fired a single shot into the air, ostensibly to scare the Floyd brothers and "make them run away." In addition, Williams testified that he thought one of the Floyd brothers had a gun, but he acknowledged that it was dark outside and that the windows to his car were tinted, and he did not dispute the evidence showing that the Floyd brothers were, in fact, unarmed. Williams also testified that, after he fired his gun, he saw Rickman fire a gun, and he then drove Rickman away from the scene. Finally, there was evidence that one of the shots

3

fired struck a window in the third-floor lobby of the Rome/Floyd County Law Enforcement Center.

Williams does not dispute that the evidence is sufficient to sustain his convictions. But consistent with our usual practice in murder cases, we independently have reviewed the record to assess the legal sufficiency of the evidence. We conclude that the evidence presented at trial, when viewed in the light most favorable to the verdicts, was sufficient to authorize a rational trier of fact to find beyond a reasonable doubt that Williams was guilty of the crimes of which he was convicted. See Jackson v. Virginia, 443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979). See also Bryant v. State, 296 Ga. 456, 458 (1) (769 SE2d 57) (2015) (sufficiency to establish guilt as party to crime).

2. Williams claims that he was denied the effective assistance of counsel when his lawyer failed to request a jury charge on the defense of habitation. To prevail on a claim of ineffective assistance, the appellant must prove both that his lawyer's performance was deficient and that he was prejudiced by this deficient performance. Strickland v. Washington, 466 U. S. 668, 687 (III) (104 SCt 2052, 80 LE2d 674) (1984). To prove that the performance of his lawyer was deficient, Williams must show that the lawyer performed his duties at trial

4

in an objectively unreasonable way, considering all the circumstances, and in the light of prevailing professional norms. Id. at 687-688 (III) (A). See also Kimmelman v. Morrison, 477 U. S. 365, 381 (II) (C) (106 SCt 2574, 91 LE2d 305) (1986). And to prove that he was prejudiced by the performance of his lawyer, Williams must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U. S. at 694 (III) (B). This burden is a heavy one, see Kimmelman, 477 U. S. at 382 (II) (C), and we conclude that Williams has failed to carry it.

Here, Williams's trial lawyer requested (and the trial court gave) jury charges on several justification-related defenses (including self-defense and defense of others), which the jury apparently rejected. Williams now asserts that his lawyer also should have requested a charge on the defense of habitation under OCGA § 16-3-23. Williams says that he would have been entitled to such a charge in light of his own testimony that the Floyd brothers initially attacked

Gibbs while Gibbs was inside his Mustang.[2] Williams is correct that a motor vehicle can be a "habitation." See OCGA § 16-3-24.1. For the most part, however, the evidence presented at trial showed that the shots were fired after any attack upon Gibbs's Mustang had ended. And even if some evidence would support a claim that one of the shots was fired while the Floyd brothers were attempting to enter Gibbs's Mustang, our precedents do not clearly establish that a person can claim the defense of habitation to protect the habitation of another. See, e.g., Fair v. State, 288 Ga. 244, 257 (2) (A) (3) (702 SE2d 420) (2010) (defense of habitation statute designed to allow "homeowners to use deadly force in protecting their homes from an illegal intruder"); Coleman v. State, 286 Ga. 291, 297 (6) (687 SE2d 427) (2009) (habitation defense is based on the "recognition of the sanctity of a person in *his* home or motor vehicle or place of business") (punctuation omitted; emphasis supplied); Hammock v. State, 277 Ga. 612, 616 (3) (592 SE2d 415) (2004) ("habitation" can include a space in a jointly-occupied dwelling so long as the defendant "has obtained the right to occupy that space and exclude his co-inhabitants therefrom"); Freeney v. State,

---

[2] Williams appears to acknowledge that there is no evidence that a use of force was necessary to prevent or terminate an unlawful entry or attack upon his Challenger.

6

129 Ga. 759, 766 (4), (5) (59 SE 788) (1907) (defense of habitation based on the premise that "every man's house is his castle"). Williams's trial lawyer did not perform deficiently when he failed to pursue a jury charge that would have required an extension of existing precedents and the adoption of an unproven theory of law. See Gomez v. State, 301 Ga. 445, 464 (11) (b) (801 SE2d 847) (2017).

3. Williams also contends that the trial court committed plain error in two instructions that it gave the jury.[3] To show plain error, Williams "must establish not only that the jury instruction was erroneous, but also that it was obviously so and that it likely affected the outcome of the proceedings." DuBose v. State, 299 Ga. 652, 654 (4) (791 SE2d 9) (2016) (citation and punctuation omitted). He has failed to make this showing.

First, Williams says that the charge on good character evidence failed to adequately explain how the jury ought to consider such evidence. More specifically, Williams argues that the trial court should have instructed the jury that good character "is a positive, substantive fact and may be sufficient to

---

[3] See OCGA § 17-8-58 (b), which permits limited review for plain error when a defendant fails to object to jury instructions.

7

produce in the minds of a jury reasonable doubt about the guilt of the defendant." But the trial court charged the jury as follows:

> You have heard evidence in this case of the character of the defendant in an effort to show that the defendant likely acted in keeping with such good character or trait at pertinent times with reference to the issues in this case. This evidence has been offered in the form of opinions of other witnesses as to his reputation. You should consider any such evidence along with all of the other evidence in deciding whether or not you have a reasonable doubt as to the guilt of the defendant.

This charge is substantially identical to the suggested pattern jury instruction on good character evidence. See Georgia Suggested Pattern Jury Instructions, Vol. II: Criminal Cases (4th ed. 2007, updated Jan. 2017) § 1.37.10. And Williams points to no authority for the proposition that the pattern charge is inadequate. See Simmons v. State, 299 Ga. 370, 374 (2) (788 SE2d 494) (2016) ("[A]n error is plain if it is clear or obvious under current law. An error cannot be plain where there is no controlling authority on point . . . ." (citation and punctuation omitted)). He relies instead on State v. Hobbs, 288 Ga. 551 (705 SE2d 147) (2010), but that case involved an earlier version of the pattern charge, and in any event, the trial court in Hobbs failed to give the pattern charge as requested by the defendant. See id. at 551. Nothing in Hobbs suggests that it is error to give

8

the current version of the pattern jury charge on good character. The charge given in this case on good character evidence properly explained how character evidence ought to be considered by the jury, and it was not plain error.

Second, Williams contends that it was plain error when the trial court referenced criminal damage to property in connection with its charge on felony murder, and he asserts that this passing reference could have led the jury to believe incorrectly that it could convict Williams of felony murder predicated on criminal damage to property. The indictment charged Williams with felony murder predicated on aggravated assault and aggravated battery, and it charged him with criminal damage to property, but it did not charge him with felony murder predicated on criminal damage to property. As Williams says, the trial court at one point told the jury:

> A person also commits the crime of murder when, in the commission of a felony, that person causes the death of another human being with or without malice. Under the laws of Georgia, aggravated assault and aggravated battery and criminal damage to property as it's alleged in this indictment are felonies and are defined as I have defined for you.

Although the trial court was right that criminal damage to property is a felony, it should not have mentioned criminal damage to property in connection with a

9

charge on felony murder. The reference to a predicate felony not alleged in the indictment was erroneous.

Williams has not shown, however, that this error likely affected the outcome of the proceedings. At another point in its charge, the trial court instructed the jury on felony murder without reference to criminal damage to property. The trial court read the indictment to the jury (including the count on felony murder, which made no mention of criminal damage to property), it instructed the jury that the State had the burden to prove every material allegation of the indictment beyond a reasonable doubt, and it provided a copy of the indictment to the jury during its deliberations. There is no indication that the prosecuting attorney (or anyone else) argued or even suggested to the jury that it should convict Williams of felony murder predicated on criminal damage to property. Moreover, the jury found Williams guilty of the aggravated assault upon Travious Floyd with a handgun, which was one of the predicate felonies included in the indictment, and it is highly likely that the jury based its felony murder verdict on the aggravated assault of Travious with a handgun. Because

the erroneous mention of criminal damage to property did not likely affect the outcome of the proceedings, Williams has not shown plain error.[4]

Judgment affirmed. Hines, C. J., Benham, Hunstein, Nahmias, Boggs, and Peterson, JJ., concur. Melton, P. J., concurs fully in Divisions 1 and 3 and in judgment only in Division 2.

---

[4] Williams also says that his trial lawyer was ineffective because he failed to object to the jury instructions at issue. But the "test for harm under plain error review is equivalent to the test in ineffective assistance of counsel cases for whether an attorney's deficient performance has resulted in prejudice of constitutional proportions." Martin v. State, 298 Ga. 259, 278 (6) (c) (779 SE2d 342) (2015). As a result, Williams's ineffective assistance claims based on the jury instructions are without merit.

Decided August 27, 2018 — Reconsideration denied September 24, 2018.

Murder. Floyd Superior Court. Before Judge Colston.

Michael W. Tarleton; Jackie L. Tyo, for appellant.

Leigh E. Patterson, District Attorney, Kayleigh A. Carter, Assistant District Attorney; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Jason M. Rea, Assistant Attorney General, for appellee.