305 Ga. 614

FINAL COPY

S18A1598.  JACKSON v. THE STATE.

BETHEL, Justice.

Alandis Jackson appeals from the denial of his motion for new trial following his convictions for malice murder and other crimes in connection with the death of Steven Lewis.[1] On appeal, Jackson argues that the evidence

---

[1] Jackson was indicted by a DeKalb County grand jury on November 20, 2014, for malice murder of Lewis, felony murder of Lewis predicated on aggravated assault, aggravated assault of Lewis with a deadly weapon, aggravated assault of Paul Jones with a deadly weapon, aggravated assault of Titus Robinson with a deadly weapon, false imprisonment of Robinson, burglary, and possession of a firearm during the commission of a felony. At trial, which occurred from January 28 to February 3, 2015, the jury found Jackson guilty on all counts. Jackson was sentenced to life imprisonment for malice murder, 20 years consecutive for aggravated assault of Jones, 20 years consecutive for aggravated assault of Robinson, 10 years concurrent for false imprisonment of Robinson, 10 years consecutive for burglary, and five years consecutive for possession of a firearm during the commission of a crime. The trial court purported to merge the counts for the felony murder of Lewis and the aggravated assault of Lewis into the malice murder conviction, but the felony murder count is actually vacated by operation of law, and the aggravated assault count merged into the malice murder count. See *Malcolm v. State*, 263 Ga. 369, 371-372 (4) (434 SE2d 479) (1993). Jackson filed a motion for new trial on February 6, 2015, which he amended on April 5, 2018. The trial court conducted a hearing on the motion on April 16, 2018, and denied the motion on June 7, 2018. Jackson filed a timely notice of appeal, and this case was docketed to the Court's August 2018 term and submitted for a decision on the briefs.

was insufficient to support his conviction for burglary; that the trial court committed plain error when it charged the jury regarding circumstantial evidence, evidence of good character, and prior statements; that he received ineffective assistance of counsel due to his trial attorney's failure to object to such instructions; and that the false imprisonment count should have merged with his conviction for the aggravated assault of Titus Robinson. As each of these enumerations of error are meritless, we affirm the trial court's denial of his motion for new trial.

1. Construed in the light most favorable to the verdict, the evidence presented at trial showed that, in the morning and early afternoon of January 11, 2012, Steven Lewis and Paul Jones were playing video games at the ground-floor apartment Lewis shared with a roommate, Zavrae Ruff. Jones had been staying at the apartment for several weeks, and he sold marijuana from the apartment. That morning, Titus Robinson was also present in the apartment, and he and Ruff were playing a video game in the back bedroom.

Jones heard a knock at the door, which was locked, and he asked who was there. Jones heard Jackson say that it was "Rock," and he let Jackson and three other men into the apartment.[2] Jackson then asked Jones to sell him

---
[2] Jackson had stayed several nights at the apartment a couple of weeks prior to

some marijuana.[3] Jones locked the door behind Jackson and the others who had followed him in.

Jackson and his three companions drew guns on Lewis and Jones, and Jackson shot Lewis, killing him. Jackson then turned the gun on Jones, threatened to kill him, and demanded money from him. Jackson's companions also had their guns drawn on Jones. Jones later testified that, at the time, he thought he was going to die.

After shooting Lewis, Jackson let two more men into the apartment and picked up another gun from the floor next to Lewis' body. One of the men who came to the apartment with Jackson ordered Jones to lie next to Lewis' body. Jackson took a bag containing money and drugs from underneath a table on which bags of marijuana were sitting. Jackson and the men he brought with him then proceeded to ransack the apartment.

Robinson and Ruff were in the bedroom the entire time, and Robinson heard Jones beg Jackson not to kill him. After hearing the gunshot and Jones'

the date of the incident in which Lewis was killed. At the time of the incident, Jones, Robinson, and Ruff each knew Jackson only as "Rock." They did not learn his actual name until later.

[3] Jones had previously sold marijuana in Jackson's presence in the apartment, and Jackson had been able to observe the amount of money and marijuana Jones kept in the apartment.

screams, Ruff jumped out the bedroom window, and Robinson tried to hide in the closet. Ruff testified that he feared for his life when he heard the gunshot and Lewis' scream. A short time later, Robinson decided to jump out the window as well, but, as he was halfway through the window, Jackson put a gun to the back of his head. Jackson ordered Robinson to move away from the window, put his hands up, and sit on the bed. Robinson complied and would later testify that Jackson's words and actions prevented him from getting up or leaving the room.

As Robinson sat on the bed, Jackson and one of the other perpetrators rifled through Ruff's bedroom and closet. Jones had stashed a supply of marijuana and money in a bag beneath a clothes bin in Ruff's closet. Jackson left Ruff's room carrying the bag of drugs and money belonging to Jones. He instructed his fellow perpetrator who had been holding Jones at gunpoint to leave with him. At that instruction, Jackson and each of his companions left the apartment.

As Jackson left, Robinson jumped out the window and ran to join Ruff. Robinson's fiancée, Che Verdell, was driving to the apartment while the incident was occurring. When she arrived, she saw Ruff and Robinson running near the entrance to the apartment complex. As she drove closer to

4

Lewis' apartment, she also saw Jackson and two of the other perpetrators walking in the breezeway. She observed Jackson hide a shotgun in his pants and saw Jackson and the other men leave the apartment complex in a car.

Law enforcement officers who arrived at the scene took statements from Ruff, Robinson, Jones, and Verdell. Ruff, Robinson, and Jones each later identified Jackson in a photo lineup.

While Jackson challenges the sufficiency of the evidence only as to his conviction for burglary, we find that the evidence presented by the State was sufficient to authorize the jury to find beyond a reasonable doubt that Jackson was guilty of each of the crimes for which he was convicted. *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

As to his burglary conviction specifically, Jackson argues that because he entered the apartment with the consent of its occupants, the State failed to prove that he entered "without authority." We disagree.

OCGA § 16-7-1 (b) provides that "[a] person commits the offense of burglary in the first degree when, without authority and with the intent to commit a felony or theft therein, he or she enters or remains within an occupied, unoccupied, or vacant dwelling house of another[.]"Jones, who

5

was residing at the apartment at the time of the incident, voluntarily admitted Jackson to the apartment. Lewis, who was seated near the door when Jackson knocked, did not protest Jackson's entry. Jackson argues that because he and the others did not force their way into the apartment or enter after being denied permission, the evidence was insufficient to demonstrate that Jackson entered the apartment without authority. See *Bell v. State*, 287 Ga. 670, 672-673 (1) (c) (697 SE2d 793) (2010); *Thompson v. State*, 271 Ga. 105, 106-108 (1) (519 SE2d 434) (1999).

However, despite the fact that Jackson was admitted to the apartment by Jones, he was a party to the crime of burglary because, after shooting Lewis, Jackson opened the apartment door to admit two of his companions who, along with Jackson and the others whom Jones let into the apartment, proceeded to ransack the apartment, steal drugs and money belonging to Jones, and hold both Jones and Robinson at gunpoint. The jury was authorized to find that Jackson did not have the authority to admit those two perpetrators into the apartment; therefore, their entry satisfied the element of entering without authority. As Jackson was a party to this act and the ensuing theft and other felonies committed inside the apartment, the evidence was sufficient to authorize his conviction for burglary. See *Adams v. State*, 271

6

Ga. 485, 485 (1) (521 SE2d 575) (1999) (evidence sufficient to support defendant's burglary conviction where defendant's accomplice entered residence without authority and committed a burglary to which defendant was party).

2. Jackson next argues that the trial court committed plain error when it issued inappropriate jury instructions regarding circumstantial evidence, evidence of good character, and prior statements. We disagree.

OCGA § 17-8-58 (a) provides in relevant part that "[a]ny party who objects to any portion of the charge to the jury or the failure to charge the jury shall inform the court of the specific objection and the grounds for such objection before the jury retires to deliberate. . . ." OCGA § 17-8-58 (b) further provides that a failure to object as specified in subsection (a) "preclude[s] appellate review of such portion of the jury charge, unless such portion of the jury charge constitutes plain error which affects substantial rights of the parties. . . ."

Jackson's counsel did not raise an objection to the jury charges given by the trial court as contemplated by OCGA § 17-8-58 (a). Thus, we must determine whether the trial court committed plain error in giving any of the

jury instructions now at issue. In the context of jury instruction errors, plain errors are remedied on appeal under the following four-part test:

> First, there must be an error or defect — some sort of deviation from a legal rule — that has not been intentionally relinquished or abandoned, i.e., affirmatively waived, by the appellant. Second, the legal error must be clear or obvious, rather than subject to reasonable dispute. Third, the error must have affected the appellant's substantial rights, which in the ordinary case means he must demonstrate that it affected the outcome of the trial court proceedings. Fourth and finally, if the above three prongs are satisfied, the appellate court has the discretion to remedy the error — discretion which ought to be exercised only if the error seriously affects the fairness, integrity or public reputation of judicial proceedings.

(Citation, punctuation and emphasis omitted.) *State v. Kelly v.*, 290 Ga. 29, 33 (2) (a) (718 SE2d 232) (2011). We consider each of Jackson's enumerations in turn.

(a) Jackson first argues that the trial court committed plain error when it gave an erroneous instruction regarding circumstantial evidence, which did not include certain language Jackson requested regarding the State's burden to exclude reasonable hypotheses other than guilt because the State's case was based on circumstantial evidence. While we agree that the trial court's denial of Jackson's request for this instruction was erroneous, Jackson's

substantial rights were not affected, and it therefore did not amount to plain error.

The record reflects that Jackson's trial counsel made a written request for the following instruction on circumstantial evidence: "To warrant a conviction on circumstantial evidence, the proven facts must not only be consistent with the theory of guilt but also exclude every other reasonable theory other than the guilt of the accused." This language tracks the current language of OCGA § 24-14-6, which went into effect before the trial in this case began.[4] However, at the charge conference, the trial court told the parties that it intended to draw its charge on circumstantial evidence from another portion of the pattern instructions, which it gave as follows:

> Evidence may be direct or circumstantial or both. In considering the evidence, you may use reasoning and common sense to make deductions and reach conclusions. You should not be concerned about whether the evidence is direct or circumstantial. . . . Circumstantial evidence is proof of a set of facts and circumstances that tend to prove or disprove another fact by inference[,] that is by consistency with such a fact or an elimination of such facts. There is no legal difference in the

---

[4] This language previously appeared in identical form in former OCGA § 24-4-6, which was repealed in conjunction with the enactment of the new Evidence Code in 2011. See also Georgia Suggested Pattern Jury Instructions, Vol. II: Criminal Cases (4th ed. 2007, updated Aug. 2018) § 1.30.20 (Direct and Circumstantial Evidence – Long Version).

weight that you may give to either direct or circumstantial evidence.[5]

Relying on this Court's decisions in *Davis v. State*, 285 Ga. 176, 177-180 (2) (674 SE2d 879) (2009) and *Mims v. State*, 264 Ga. 271, 272-273 (443 SE2d 845) (1994), and the Court of Appeals' recent decision in *Stroud v. State*, 344 Ga. App. 827, 834-837 (5) (812 SE2d 309) (2018), Jackson argues that the trial court committed plain error when it refused to give the additional portion of the pattern charge on circumstantial evidence that he requested. We disagree that the trial court committed plain error.

Here, the State's case involved, at least to some degree, circumstantial evidence of Jackson's guilt. Although Jackson's trial occurred after the effective date of the new Evidence Code,[6] he primarily relies on decisions of this Court pre-dating the enactment of the new Evidence Code. However, that is of no consequence. Those decisions made clear that "if the case relies to any degree upon circumstantial evidence, a charge on [former OCGA § 24-4-

---

[5] See Georgia Suggested Pattern Jury Instructions, Vol. II: Criminal Cases (4th ed. 2007, updated Aug. 2018) § 1.30.20 (Direct and Circumstantial Evidence – Short Version).

[6] The provisions of the new Evidence Code went into effect on January 1, 2013, and Jackson's trial occurred in 2015. See Ga. L. 2011, p. 99, § 101 ("This Act shall become effective on January 1, 2013, and shall apply to any . . . trial commenced on or after such date.").

6] is required upon written request." (Citation, punctuation and emphasis omitted.) *Davis*, 285 Ga. at 180 (2). The previous language of OCGA § 24-4-6 was carried into the new Evidence Code in identical form in the current version of OCGA § 24-14-6, and there is no materially identical federal rule of evidence. See *State v. Almanza*, 304 Ga. 553, 556-557 (2) (820 SE2d 1) (2018). As we discussed in *Almanza*, "[i]f there is no materially identical Federal Rule of Evidence and a provision of the old Evidence Code was retained in the new Code, our case law interpreting that former provision applies." Id. "Given this well-established law, we must conclude that the trial court's refusal to give the requested charge constitutes [clear] and obvious error." *Stroud*, 344 Ga. App. at 835 (5).

However, that does not end our inquiry. Jackson must also "demonstrate that [the error likely] affected the outcome of the trial court proceedings." (Citation and punctuation omitted.) *Kelly*, 290 Ga. at 33 (2) (a). This he has failed to do.

While circumstantial evidence comprised a portion of the State's case, the State also presented the eyewitness testimony of Jones and Robinson. In addition to testifying that Jackson held him at gunpoint, Jones testified about directly witnessing Jackson shoot Lewis, admit additional accomplices into

the apartment, ransack the apartment, and take drugs and money from the apartment. Robinson testified about hearing a gunshot coming from the living room, Jackson holding him at gunpoint in the bedroom and ordering him to remain on the bed, and Jackson and an accomplice ransacking the bedroom and taking drugs and money from the bedroom closet. Thus, because the State's case was not based primarily on circumstantial evidence and because the evidence of Jackson's guilt was strong, we determine that the trial court's failure to provide the requested instruction on circumstantial evidence did not adversely affect Jackson's substantial rights. See *Durham v. State*, 292 Ga. 239, 240-241 (3) (734 SE2d 377) (2012) (failure to give instruction on circumstantial evidence did not affect the outcome of proceedings in murder and armed robbery trial where eyewitness testified to seeing defendant, whom she knew by a nickname, shoot and steal a necklace from the victim). Cf. *Stanbury v. State*, 299 Ga. 125, 129-30 (2) (786 SE2d 672) (2016); *Davis*, 285 Ga. at 180 (2). This enumeration therefore fails.

(b) Jackson also argues that the trial court committed plain error when it issued its charge on character evidence. Specifically, Jackson suggests that it was error not to include language he requested stating that good character

12

is a substantive fact which itself creates reasonable doubt as to the defendant's guilt. We find no plain error here.

The record reflects that, after a lengthy discussion at the charge conference, the trial court elected to include Jackson's proposed charge on his character trait of peacefulness, as it was supported by the evidence presented by Jackson at trial and because it was relevant to his malice murder charge. The trial court refused to include a requested charge on humility, finding that the requested instruction was not relevant to any issue in the case. The trial court's charge to the jury included the following:

> You have heard evidence of the good character of the defendant and the character of the defendant for a particular trait, more specifically peacefulness, in an effort to show that the defendant likely acted in keeping with such character or trait at pertinent times or with reference to issues in this case. This evidence has been offered in the form of the opinion of another witness. You should consider any such evidence along with all the other evidence in deciding whether or not you have reasonable doubt about the guilt of the defendant.

This charge tracked the language of Georgia Suggested Pattern Jury Instructions § 1.37.10 and was tailored specifically to include a reference to peacefulness, as Jackson presented testimony at trial on that issue. We find no clear error in the trial court's decision to issue this instruction. See *Parker*

*v. State*, 305 Ga. 136 (823 SE2d 313) (2019); *Williams v. State*, 304 Ga. 455, 458-459 (3) (818 SE2d 653) (2018).

(c) Jackson also argues that the trial court gave an erroneous instruction regarding the use of prior statements, as the charge failed to include Jackson's requested language regarding the jury's ability to consider a prior inconsistent statement as substantive evidence, rather than simply for purposes of impeachment. We disagree.

The record reflects that the trial court drew the relevant portions of its charge from the Georgia Suggested Pattern Jury Instructions on impeachment and prior statements, and it instructed the jury as follows:

> To impeach a witness is to show that the witness is unworthy of belief. A witness may be impeached by disproving the facts to which the witness testified. Your assessment of a trial witness' credibility may be affected by comparing or contrasting that testimony to statements or testimony of that same witness, before the trial started. It is for you to decide whether there is a reasonable explanation for any inconsistency in a witness' pretrial statements and testimony, when compared to the same witness'[ ] trial testimony.[7]

---

[7] See Georgia Suggested Pattern Jury Instructions, Vol. II: Criminal Cases (4th ed. 2007, updated Aug. 2018) §§ 1.31.45 (Impeached Witness) and 1.31.47 (Prior Statements).

In a separate portion of its charge, the trial court also instructed the jury that the evidence "includes all of the testimony of the witnesses and any exhibits admitted during the trial." There was no plain error in issuing these instructions, as they clearly directed the jury to consider as evidence all of the testimony presented in the case, including testimony regarding witnesses' prior statements.

3. Jackson next argues that he received ineffective assistance of counsel due to his trial counsel's failure to preserve objections to the jury charges discussed in Division 2, supra, as such failure exposed him to a more stringent standard of review on appeal. We disagree.

> To prevail on [this claim, Jackson] has the burden of proving both that the performance of his lawyer was professionally deficient and that he was prejudiced as a result. . . . In examining an ineffectiveness claim, a court need not address both components of the inquiry if the defendant makes an insufficient showing on one.

(Citations and punctuation omitted.) *Stuckey v. State*, 301 Ga. 767, 771 (804 SE2d 76) (2017) (citing *Strickland v. Washington*, 466 U. S. 668, 687 (104 SCt 2052, 80 LE2d 674) (1984)).

As to the failure of Jackson's counsel to object to the instruction on circumstantial evidence, Jackson has made no showing that he was

prejudiced by this failure. As noted in Division 2 (a), above, strong direct evidence of Jackson's guilt was elicited at trial from eyewitnesses who knew him (and who were themselves victims). This claim of ineffectiveness therefore fails. See *Durham*, 292 Ga. at 242 (4) (d).

The other jury charges challenged by Jackson (regarding good character and use of prior statements) conformed to the relevant portions of the Georgia Suggested Pattern Jury Instructions and, specifically as to the charge on character evidence, were tailored to the evidence presented at trial. Pretermitting whether counsel was deficient for failing to object to the charges in the manner contemplated by OCGA § 17-8-58 (a), Jackson has not demonstrated that he was prejudiced by that failure. Although the charges his counsel requested differed from the pattern charges given by the trial court, Jackson has made no showing that the charges as given contained a substantive misstatement of law, were misleading or confusing, or that there was a reasonable likelihood that the outcome of the case would have been different had his requested charges been issued. See *Williams v. State*, 304 Ga. 455, 460 (3) n.4 (818 SE2d 653) (2018); *Rainwater v. State*, 300 Ga. 800, 806 (4) (797 SE2d 889) (2017). Accordingly, those claims of ineffectiveness fail, as well.

4. Finally, Jackson argues that the false imprisonment count should have merged with his conviction for the aggravated assault with a deadly weapon of Titus Robinson. We disagree.

Here, the sole authority cited by Jackson for the proposition that these offenses merge is the decision of the Court of Appeals in *Weaver v. State*, 178 Ga. App. 91, 93 (4) (341 SE2d 921) (1986). That decision relied on this Court's 1982 decision in *Haynes v. State*, 249 Ga. 119 (288 SE2d 185) (1982), which the Court of Appeals cited for the proposition that two charges merge when the prosecution "uses up" all of the evidence that the defendant committed one crime in establishing another crime.

However, this Court set aside that analytical framework when it decided *Drinkard v. Walker,* 281 Ga. 211 (636 SE2d 530) (2006). In *Drinkard*, we overruled our prior decision in *State v. Estevez*, 232 Ga. 316 (206 SE2d 475) (1974), the progeny of which included *Haynes*. *Drinkard*, 281 Ga. at 217 n.38. Specifically, *Drinkard* abandoned as unworkable the "actual evidence" test adopted in *Estevez* (and applied in *Haynes*) in favor of the "required evidence" test previously adopted by the U. S. Supreme Court in *Blockburger v. United States*, 284 U. S. 299 (52 SCt 180, 76 LE 306) (1932). Under that test, "the applicable rule is that where the same act or

transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one[ ] is whether each provision requires proof of a fact which the other does not." *Drinkard*, 281 Ga. at 215. "If so, then two offenses exist, and one is not 'included in' the other." *Womac v. State*, 302 Ga. 681, 684 (3) (808 SE2d 709) (2017). Curiously, although the line of authority relied upon by Jackson was explicitly overruled by this Court, the State (via the briefs of both the District Attorney and the Attorney General) concedes that the aggravated assault and false imprisonment charges merge in this case.

OCGA § 16-5-21 (a) (2) provides that "[a] person commits the offense of aggravated assault when he or she assaults[8] . . . [w]ith a deadly weapon[.]" OCGA § 16-5-41 (a) provides that "[a] person commits the offense of false imprisonment when, in violation of the personal liberty of another, he arrests, confines, or detains such person without legal authority."

The crime of false imprisonment includes the violation of liberty without lawful authority through arrest, confinement, or detention. None of

---

[8]

OCGA § 16-5-20 (a) provides that "[a] person commits the offense of simple assault when he or she either [a]ttempts to commit a violent injury to the person of another; or [c]ommits an act which places another in reasonable apprehension of immediately receiving a violent injury."

these elements must be satisfied in order to prove an aggravated assault with a deadly weapon. Moreover, neither an assault nor the use of a deadly weapon must be proven in order to prove a false imprisonment. Thus, because under *Drinkard* each offense requires proof of facts which the other does not, these offenses do not merge as a matter of law.

Judgment affirmed. All the Justices concur.

Decided March 4, 2019 — Reconsideration denied March 27, 2019.

Murder. DeKalb Superior Court. Before Judge Jackson.

Clifford L. Kurlander, for appellant.

Sherry Boston, District Attorney, Emily K. Richardson, Deborah D. Wellborn, Assistant District Attorneys; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Scott O. Teague, Assistant Attorney General, for appellee.