308 Ga. 479
FINAL COPY

S20A0273.  MARTIN v. THE STATE.

WARREN, Justice.

A jury convicted Marquez Deshawn Martin of felony murder and other crimes in connection with the shooting deaths of James Wood and Russell Jacobs.[1]  On appeal, Martin contends that his trial counsel was constitutionally ineffective by failing to object to the trial court's omission of certain language trial counsel had requested for the jury charge on defendant's good character.  Because Martin

---

[1] The crimes occurred in the early morning hours of May 7, 2013.  A Monroe County grand jury indicted Martin, along with co-defendants Jordan Maxwell and Dave-Von Sapp, on February 10, 2014, charging them with four counts each of felony murder, armed robbery, aggravated assault, conspiracy to commit armed robbery, and violating the Street Gang Terrorism and Prevention Act.  Maxwell and Sapp pled guilty.  At a trial held from August 31 to September 3, 2015, the jury found Martin guilty of all counts.  The trial court sentenced Martin to concurrent sentences of life in prison without the possibility of parole for the four felony murder counts and concurrent sentences of ten years to serve on three of the gang act counts (the fourth of which was nolle prossed). The remaining counts were merged for purposes of sentencing. Martin filed a timely motion for new trial on September 21, 2015, and amended it through new counsel on January 3, 2018. After a hearing, the trial court denied the motion, as amended, on August 21, 2018.  Martin filed a motion for out of time appeal, which the trial court granted.  On May 24, 2019, Martin filed a notice of appeal, which was docketed in this Court for the term beginning in December 2019 and submitted for a decision on the briefs.

has failed to establish that his trial counsel was deficient in not objecting to the omission of the requested language, we affirm in part, but we also vacate in part to correct a sentencing error and remand for resentencing.

1. Viewed in the light most favorable to the jury's verdicts, the evidence presented at Martin's trial showed the following. During the evening of May 6 and the morning of May 7, 2013, Martin was with three acquaintances: Dave-Von Sapp, Jordan Maxwell, and Sameria Carter.[2] All four were either members of, or associated with, the street gang MOE ("Money Over Everything"). Maxwell's nickname was "C-1" or "Boss C-1" because he was a leader of MOE at the time. Martin was not a member of MOE, but was Maxwell's "do boy," meaning he would do whatever Maxwell told him to do "at all costs."[3] The four left Maxwell's apartment in Martin's Pontiac

---

[2] Carter was charged separately from Sapp, Maxwell, and Martin. As part of negotiated plea deals entered into before trial, Carter and Sapp agreed to testify truthfully as State witnesses.

[3] When law enforcement officers searched Martin's phone in the course of their investigation, they discovered that Martin had Maxwell listed in his phone as "C-1."

Torrent with Martin behind the wheel looking "to hit a lick," meaning they intended to commit a "robbery or break[ ] into something," which they openly discussed. Martin, Maxwell, and Sapp each had gloves and guns with them.

The group stopped at a hotel, and, while still in Martin's vehicle, Maxwell and Sapp covered their faces with bandanas. Maxwell and Sapp exited the vehicle and robbed several men in one of the hotel rooms while Martin and Carter waited in the vehicle. When Maxwell and Sapp got back in Martin's vehicle, the group rode off, excitedly talking about the robbery and looking for more targets to rob. Next, the group stopped at a closed Walmart gas station, where Martin got out and helped the others break into locked containers outside the gas station and steal snacks and drinks, which they loaded into Martin's vehicle together. The four left and continued riding around looking for additional robbery targets, which they again openly discussed. They then noticed Wood and Jacobs walking to a nearby gas station. Maxwell and Sapp commented that the two men were good targets, Martin turned the

vehicle around, and the group stopped at the gas station that they had seen Wood and Jacobs walking toward. The others sent Carter into the station behind Wood and Jacobs to determine if the men were carrying cash. Carter and Wood spoke briefly, and Carter learned that Wood and Jacobs ran their car into a ditch and needed help pulling it out. Wood offered $20 for Carter's help finding and removing their vehicle from the ditch. Carter brought Wood and Jacobs out to Martin's Pontiac Torrent where Sapp, Maxwell, and Martin sat waiting. Carter, Wood, and Jacobs got into the vehicle, and the six rode off to find Wood and Jacobs's car.

When they were unsuccessful in locating the car, Wood invited everyone back to his house. Once at Wood's house, the group hung out in the living room, drinking and smoking. At some point, Carter and Martin left the room to steal items in the house. Then, Maxwell and Sapp also left the room, and Maxwell told Sapp that he was going to kill Wood and Jacobs. Sapp attempted to talk Maxwell out of it, but Maxwell returned to the room and shot Jacobs in the head. Maxwell ordered Wood to get on the ground, but Wood rushed

Maxwell and the two began fighting for Maxwell's gun. Sapp ran outside, where he saw Martin in the vehicle retrieving gloves and a gun. Martin and Sapp then ran back inside. Martin pointed his gun at Wood and ordered him to "[l]et [Maxwell] the f**k go," and to "get on the mother f**king ground." Wood reluctantly complied; at which point Maxwell ordered Martin to shoot Wood. Martin refused, so Maxwell shot Wood himself.

Maxwell, Sapp, Martin, and Carter then went through the house stealing electronics. Later, Martin took a photo on his phone of a television they stole from Wood's home and the snacks they had stolen from Walmart earlier that night. Maxwell, Sapp, Martin, and Carter returned to Maxwell's apartment, where they unloaded the stolen goods. Martin sold the television to his cousin in exchange for "a lot" of marijuana.

With the help of surveillance video from the gas station where Maxwell, Sapp, Martin, and Carter first encountered Wood and Jacobs, law enforcement investigators were able to identify Carter, as well as Martin's Pontiac Torrent, which eventually led

investigators to identify and arrest all four of the perpetrators. In an interview with an investigator, Carter identified Maxwell, Sapp, and Martin as her accomplices on the night of the crimes and confirmed that the group robbed Wood and Jacobs. Law enforcement officers later found property that had belonged to Wood in Maxwell's home, a gun hidden in the battery compartment of Martin's vehicle, and another gun at Martin's home.[4]

Martin does not contest the legal sufficiency of the evidence supporting his convictions. Nevertheless, in accordance with this Court's general practice in murder cases, we have reviewed the record and conclude that, when viewed in the light most favorable to the verdicts, the evidence presented at trial and summarized above was sufficient to authorize a rational jury to find Martin guilty beyond a reasonable doubt of the crimes for which he was convicted. See *Jackson v. Virginia,* 443 U.S. 307, 319 (99 SCt 2781, 61 LE2d 560) (1979).

---

[4] Investigators later determined that those guns were stolen from a pawn shop two weeks earlier in a robbery committed by Martin, Maxwell, and others, in which Martin acted as the getaway driver.

2.     Martin's sole enumeration of error is that his trial counsel was constitutionally ineffective for failing to object to the trial court's omission of language from what Martin calls a "suggested footnote" that trial counsel initially requested from the suggested pattern jury instruction on "good character of defendant."

To prevail on a claim of ineffective assistance of counsel, a defendant generally must show that counsel's performance was deficient and that the deficient performance resulted in prejudice to the defendant. *Strickland v. Washington*, 466 U.S. 668, 687-696 (104 SCt 2052, 80 LE2d 674) (1984); *Wesley v. State*, 286 Ga. 355, 356 (689 SE2d 280) (2010). To satisfy the deficiency prong, a defendant must demonstrate that his attorney "performed at trial in an objectively unreasonable way considering all the circumstances and in the light of prevailing professional norms." *Romer v. State*, 293 Ga. 339, 344 (745 SE2d 637) (2013); see also *Strickland*, 466 U.S. at 687-688. This requires a defendant to overcome the "strong presumption" that trial counsel's performance was adequate. *Marshall v. State*, 297 Ga. 445, 448 (774 SE2d 675) (2015) (citation

and punctuation omitted). To satisfy the prejudice prong, a defendant must establish a reasonable probability that, in the absence of counsel's deficient performance, the result of the trial would have been different. *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. "If an appellant fails to meet his or her burden of proving either prong of the *Strickland* test, the reviewing court does not have to examine the other prong." *Lawrence v. State*, 286 Ga. 533, 533-534 (690 SE2d 801) (2010).

At trial, Martin's defense theory was that although he drove his co-defendants to various locations, he was unaware that they were committing robberies or planned to rob Wood and Jacobs. Martin presented character evidence through three witnesses — a former schoolmate, Martin's mother, and the father of Martin's brother — each of whom testified about Martin's good character.

The trial court charged the jury on defendant's good character, as requested by Martin's trial counsel, with language closely tracking the suggested pattern jury instruction. Specifically, the

court instructed the jury:

> You have heard evidence of the character of the defendant in an effort to show that the defendant likely acted with such character or trait at pertinent times or with reference to issues in this case. This evidence has been offered in the form of opinion of other witnesses.
> You should consider any such evidence along with all other evidence in deciding whether or not you have a reasonable doubt about the guilt of the accused.

See Suggested Pattern Jury Instructions, Vol. II: Criminal Cases, § 1.37.10 (4th ed. 2020). However, trial counsel also asked that the trial court include in its charge on good character additional language from a note to that charge in the suggested pattern jury instructions, which reads:

> *Note: The committee feels the above charge is complete and adequate for the principle of Good Character. However, in view of* State v. Hobbs, 288 Ga. 551 (705 SE2d 147) (2010)] *(pre-new evidence code), in order to be safe, consider adding the following:*
>
> (Good character is not just a witness credibility issue, nor is it an excuse for crime. However, you may consider it as weighing on the issue of whether or not the defendant is guilty of the charges in the indictment.)

Id. The trial court did not include this language in its charge to the

jury.[5]   Martin now contends that his trial counsel rendered constitutionally ineffective assistance by failing to object to the trial court's decision to not include this additional language in its jury charge on good character.  We disagree.

Martin specifically contends that — despite this Court's conclusion in *Williams v. State,* 304 Ga. 455 (818 SE2d 653) (2018), that a jury charge that was "substantially identical" to the very same jury instruction on a defendant's good character given in this case "properly explained how character evidence ought to be considered by the jury," and our holding that the instruction did not constitute plain error, id. at 458-459 — trial counsel's duty to her client still required her to object when the trial court did not include in the jury instruction the language in the "note" that referenced *Hobbs.*  According to Martin, the language contained in that note

---

[5] During the charge conference, the trial court proposed an instruction that did not include the additional language Martin's counsel had requested, noting that it had "cut some of the stuff in that charge," but inviting Martin's counsel to provide different language.  Both Martin's counsel and the prosecutor declined, and the court charged the jury with the standard good character of defendant charge set forth above.

was the only language that could have informed the jury that "good character, in and of itself, is a substantive fact which may raise a reasonable doubt in the mind of the jury." See *Hobbs*, 288 Ga. at 553. Like the defendant in *Williams*, however, Martin points to no authority that supports his proposition that the pattern charge is inadequate. See *Williams*, 304 Ga. at 459. Moreover, Martin fails to acknowledge that in *Williams,* this Court distinguished *Hobbs* because it "involved an earlier version of the pattern charge" and involved a trial court altogether failing to give the pattern jury charge, *Williams*, 304 Ga. at 459, and that both bases for distinguishing *Hobbs* from *Williams* are true here. Nor does Martin acknowledge more recent cases from this Court. See, e.g., *Jackson v. State*, 305 Ga. 614, 620-621 (825 SE2d 188) (2019) (citing *Williams* to support holding of no plain error in giving pattern charge on defendant's good character without additional language stating that "good character is a substantive fact which itself creates reasonable doubt as to the defendant's guilt"); *Parker v. State*, 305 Ga. 136, 138 (823 SE2d 313) (2019) (citing *Williams* for the proposition that

"nothing in *Hobbs* suggests that it is error to give the current version of the pattern jury charge on good character" and that "the pattern charge adequately communicated to the jury that evidence of his good character could generate reasonable doubt to acquit") (citation and punctuation omitted). Because it was not error for the trial court to give the jury instruction Martin complains of on appeal, and because "deficient performance is not shown by counsel's failure to raise a meritless objection" to a jury charge, *Smith v. State*, 308 Ga. __ (__ SE2d __) (2020) (citation and punctuation omitted), Martin's claim of ineffective assistance of counsel fails.

3.     We note a sentencing error requiring us to remand this case for resentencing. The trial court sentenced Martin to concurrent life sentences on all four felony murder convictions. But because there were only two murders, it was error for the trial court to sentence Martin on four murder counts. See *Coe v. State*, 274 Ga. 265, 266 (553 SE2d 784) (2001). Instead, two of those verdicts were vacated by operation of law. See *McCoy v. State*, 303 Ga. 141, 144 (810 SE2d 487) (2018). And because "[t]he decision as to which of

the . . . felony murder verdicts should be deemed vacated — a decision that may affect which other verdicts merge and thus what other sentences may be imposed — is left to the discretion of the trial court on remand," *Cowart v. State*, 294 Ga. 333, 336 (751 SE2d 399) (2013), we vacate Martin's sentences and remand to the trial court to resentence Martin in accordance with this opinion.

*Judgment affirmed in part and vacated in part, and case remanded for resentencing. Melton, C. J., Nahmias, P. J., and Blackwell, Boggs, Peterson, Bethel, and Ellington, JJ., concur.*

DECIDED APRIL 6, 2020.
Murder. Monroe Superior Court. Before Judge Wilson.
*Michael W. Tarleton*, for appellant.
*Jonathan L. Adams, District Attorney, Elizabeth K. Presley, Cynthia T. Adams, Assistant District Attorneys; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Ashleigh D. Headrick, Assistant Attorney General*, for appellee.