**FIRST DIVISION**
**BARNES, P. J.,**
**MERCIER and BROWN, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**May 24, 2019**

# In the Court of Appeals of Georgia

A19A1353. MONTGOMERY v. THE STATE.

BARNES, Presiding Judge.

A jury found Nathan Alan Montgomery guilty of false imprisonment, aggravated assault, and hindering an emergency telephone call. Following the denial of his amended motion for new trial, Montgomery appeals, contending that the trial court erred in finding that he intentionally placed his general character in issue and, consequently, erred in permitting the State to cross-examine a witness about his criminal history. Montgomery further contends that the trial court committed plain error by not instructing the jury on how to consider evidence of a defendant's general good character, and that his trial counsel rendered ineffective assistance by failing to request such an instruction. Discerning no basis for reversal, we affirm.

On appeal after a criminal conviction, we view the evidence in the light most favorable to the jury's verdict. *Anthony v. State*, 317 Ga. App. 807, 807 (732 SE2d 845) (2012). So viewed, the evidence showed that Montgomery and the victim were married for several years and had a volatile, contentious relationship. In early 2015, Montgomery and the victim separated and filed for divorce. On March 21, 2015, which was before the divorce was finalized, Montgomery encountered the victim at a brewery. The victim left to go home after Montgomery upset her, and Montgomery had a coworker drive him to the victim's house a short while later.

After arriving at the victim's house, Montgomery entered through an unlocked door while his coworker waited in the car. The victim asked Montgomery to leave, but he forced her into another room, lifted her up, slammed her to the floor, jumped up and down on her chest with his feet, pressed her face into the floor with his foot, and placed her in a headlock. When the victim reached for her cell phone and told Montgomery she was calling the police, Montgomery grabbed her arm, wrestled the phone away from her, and threw it against the wall across the room. During the attack, Montgomery confined the victim in the bathroom for a period of time and would not let her leave. According to the victim, Montgomery also forced her to perform oral sex and to have sexual intercourse with him and placed a pillow over her

face to suffocate her. Montgomery left the victim's house after the attack, and she called 911 and was transported to the hospital by ambulance.

Montgomery was indicted for rape, aggravated sodomy, false imprisonment, aggravated assault (two counts), and hindering an emergency telephone call. During the jury trial, the victim testified to the attack by Montgomery as set forth above. She also testified about four prior difficulties between her and Montgomery, including prior incidents in which he sexually and physically abused her. The State sought to corroborate the victim's description of the attack through photographs taken of her at the hospital and the sheriff's office and emails between her and Montgomery on the day of the attack. Additionally, among other witnesses, the State called an investigator from the sheriff's office who testified that the victim appeared "terrified" at the hospital and described the bruises and other marks that he saw on her neck, arms, and leg.

Montgomery elected to testify and denied that he ever physically or sexually assaulted the victim. He also called eleven character witnesses who testified about his reputation for honesty and/or their opinion that he was trustworthy. After one of the character witnesses testified more broadly that Montgomery was "to be admired," the trial court warned that the defense was getting close to the line of placing

3

Montgomery's general character in issue. Ultimately, when one of the character witnesses testified on direct-examination that Montgomery was a "man of integrity," the trial court ruled that the defense had intentionally placed Montgomery's general character in issue and thus had opened the door to the State cross-examining the witness about whether the witness knew or had heard about Montgomery's drug, alcohol and driving-related arrests and convictions.

Later in the trial, during the charge to the jury, the trial court gave an instruction on evidence of the defendant's character for truthfulness, pointing out to the jury that "[y]ou should consider any such evidence along with all the other evidence in deciding whether or not you have a reasonable doubt about the guilt of the defendant." Defense counsel had requested the instruction.

Following its deliberations, the jury found Montgomery guilty of false imprisonment, hindering an emergency telephone call, and one count of aggravated assault (based on the allegation that he jumped up and down on the victim's chest with his feet). The jury acquitted him of rape, aggravated sodomy, and the second count of aggravated assault (based on the allegation that he covered her face with the pillow in a manner "likely to result in strangulation"). Montgomery then filed a

4

motion for new trial, as amended, which the trial court denied after conducting a hearing in which Montgomery's two trial attorneys testified. This appeal then ensued.

1. Montgomery contends that the trial court erred in finding that he intentionally placed his general character in issue and, therefore, erred in permitting the State to cross-examine one of his character witnesses about his criminal history. We disagree.

Under Georgia's current Evidence Code, the admissibility of evidence of a defendant's character is governed by OCGA §§ 24-4-404[1] and 24-4-405.[2] See *Timmons v. State*, 302 Ga. 464, 467 (2) (a) (807 SE2d 363) (2017). As a general rule, evidence of a person's character is inadmissable. See OCGA § 24-4-404 (a); *Wade*

---

[1] OCGA § 24-4-404 provides in relevant part:
    (a) Evidence of a person's character or a trait of character shall not be admissible for the purpose of proving action in conformity therewith on a particular occasion, except for:
    (1) Evidence of a pertinent trait of character offered by an accused or by the prosecution to rebut the same . . . .

[2] OCGA § 24-4-405 provides in relevant part:
    (a) In all proceedings in which evidence of character or a trait of character of a person is admissible, proof shall be made by testimony as to reputation or by testimony in the form of an opinion.
    . . . .
    (c) On cross-examination, inquiry shall be allowable into relevant specific instances of conduct.

5

*v. State*, 304 Ga. 5, 10 (3) (815 SE2d 875) (2018); *Timmons*, 302 Ga. at 468 (2) (a).

But, "[w]hen a witness testifies about a defendant's good character, the State may cross-examine that witness about the defendant's prior misconduct in an attempt to undermine the witness's credibility." *Leanos v. State*, 303 Ga. 666, 672 (2) (c) (iii) (814 SE2d 332) (2018). See OCGA §§ 24-4-404 (a) (1); 24-4-405 (c); *United States v. Glass*, 709 F2d 669, 673 (11th Cir. 1983) (per curiam).[3] As part of the cross-examination of the character witness by the State, "inquiry is allowable into relevant specific instances of conduct, including prior convictions or arrests of the accused." (Citations and punctuation omitted.) *United States v. Coumaris*, 399 F3d 343, 348 (II) (A) (D. C. Cir. 2005). See OCGA § 24-4-405 (c); *United States v. Collins*, 779 F2d 1520, 1532 (11th Cir. 1986) (character witness could be questioned on cross-examination about whether he had heard of defendant's prior arrests and convictions).

If the defendant elicits testimony from a character witness regarding a specific character trait of the defendant, the State is limited to cross-examining the witness

---

[3] As our Supreme Court has explained:
Many provisions of [Georgia's] new Evidence Code were borrowed from the Federal Rules of Evidence, and when we consider the meaning of these provisions, we look to decisions of the federal appellate courts construing and applying the Federal Rules, especially the decisions of the United States Supreme Court and the Eleventh Circuit.
(Citation and punctuation omitted.) *Timmons*, 302 Ga. at 468 (2) (a).

about specific instances of the defendant's conduct that "are relevant to the trait[ ] of character about which the witness[ ] has testified." *Coumaris*, 399 F3d at 348 (II) (A). See OCGA § 24-4-404 (a) (1); *Stroud v. State*, 301 Ga. 807, 812 (II), n. 7 (804 SE2d 418) (2017) (noting that "under both old and new Evidence Code, [a] defendant's character witnesses may be cross-examined about their knowledge of a prior conviction if such conviction rebutted the 'specific character trait' as to which the witness testified") (citation omitted); *United States v. Adair*, 951 F2d 316, 319 (II) (C) (11th Cir. 1992) (when a witness testifies about defendant's character trait, cross-examination is permitted with regard to "particular instances of conduct relevant to the trait in question"). By contrast, if the defendant places his general character in issue through a character witness, the door is opened for the prosecution to cross-examine the witness about specific instances of the defendant's conduct reflecting bad character. See *United States v. Clark*, 26 Fed. Appx. 422, 428 (6th Cir. 2001) (per curiam). See also *United States v. Mendoza-Prado*, 314 F3d 1099, 1105 (C) (2) (9th Cir. 2002) (concluding that "evidence of general good character opened the door to the government's evidence of prior bad acts to demonstrate bad character"); *United States v. Hegwood*, 977 F2d 492, 496 (III) (9th Cir.1992) ("[W]hen the defendant

7

'opens the door' to testimony about an issue by raising it for the first time himself, he cannot complain about subsequent government inquiry into that issue.").

Here, after a defense character witness testified on direct-examination that Montgomery was a "man of integrity," the trial court ruled that Montgomery had placed his general character in issue, thereby opening the door to the State cross-examining the witness about Montgomery's arrests and convictions for drug, alcohol, and driving offenses. On appeal, Montgomery contends that the trial court erred in finding that he placed his general character in issue because the character witness's testimony was nonresponsive to the question originally posed by defense counsel.

"An inadvertent or nonresponsive answer by a witness that invokes the defendant's good character . . . does not automatically put his character at issue so as to open the door to character evidence." (Citation and punctuation omitted.) *Harris v. State*, 330 Ga. App. 267, 271 (1) (765 SE2d 369) (2014). See *Wade v. State*, 304 Ga. 5, 10 (3) (815 SE2d 875) (2018) (noting that "witnesses' statements were nonresponsive" and thus did not put the defendant's character at issue under OCGA § 24-4-404). See also 2 Christopher B. Mueller et al., Federal Evidence § 4:43 (4th ed. updated July 2018) ("It seems that if a defense witness gives a nonresponsive answer that contains an endorsement of the good character of the defendant, . . . the

8

prosecutor should not be allowed to exploit this situation by cross-examining on bad acts or offering other negative character evidence."). Rather, the defendant must choose to place his good character in issue through the examination of the witness. See *Garner v. State*, 346 Ga. App. 351, 359 (2), n. 26 (816 SE2d 368) (2018) ("Generally, the character of the defendant should not come into evidence unless he chooses to put his character in issue[.]") (citation and punctuation omitted). See also Milich, supra, § 11:4 ("The defendant chooses whether or not to put his character in issue."); *Govt. of Virgin Islands v. Roldan*, 612 F2d 775, 778 (II) (A) (3d Cir. 1979) (defendant "opened the door by putting his character in issue," where witness's statement that defendant "never bother[ed] anybody" was not a "gratuitous, unsolicited remark") (punctuation omitted).

> [W]hether a statement [by a witness] making reference to the defendant's good character is merely inadvertent or manifests a conscious election [by the defendant to put his character in issue] is a question of fact, determined primarily upon the trial court's assessment of the intent of the accused and his counsel. We afford great deference to the trial court's rulings in this regard.

(Citation and punctuation omitted.) *Harris*, 330 Ga. App. at 271 (1). Furthermore, the question whether the defendant has intentionally placed his character in issue through

9

the direct-examination of a witness is not assessed in a vacuum; rather, the trial court can consider the questioning of the witness in the context of the trial proceedings as they have unfolded and the trial strategy being pursued by defense counsel. See id.

Mindful of these principles, we turn to the record in the present case to ascertain whether the trial court abused its discretion in determining that Montgomery intentionally placed his general character in issue. The record reflects that during the defense's opening statement, defense counsel emphasized to the jury:

> Pay close attention, if you will, please, to evidence we believe is going to [be] brought forth in the form of witnesses as far as character for Mr. Montgomery. We've given quite a few names to the State and they know about them. And these folks are going to come forth and they're going to take an oath. And these folks are going to swear to tell the truth. And it will be your decision to decide whether you believe them or not, but telling the truth matters to these people. They're going to take time out of their lives and come up here today and I want you to listen closely. Listen to what they're going to say. Listen to what they're going to say about the character of the man sitting there accused.

Subsequently, during defense counsel's cross-examination of Montgomery's coworker who drove him to the victim's house, the following exchange occurred:

> Q: Okay. How long have you known Mr. Montgomery?
> A: Let's see, since 2014 at least.
> Q: Okay. How would you describe your opinion of Mr. Montgomery's character?
> A: As what?
> Q: Of Mr. Montgomery's character, what kind of person is he?

10

A: Hard worker. In my opinion he was always there for me, if anything. I always went to his Bible study. So I didn't – any place we went to work at everybody all the – whoever we were doing work for they seemed to trust him just fine. We had good conversations, sit down, they'd offer him coffee. I never saw any problem with him personally.

Thereafter, during the defense's case-in-chief, the defense called eleven character witnesses who knew Montgomery through church, work, and/or family. The first two character witnesses testified that they knew Montgomery through church and work and that he had a reputation in the community for truthfulness and honesty and that he was honest in their opinion. The third character witness, however, went further in her testimony. She testified that Montgomery had taught her Bible study group for eleven years, and when asked about Montgomery's reputation for honesty, she testified that Montgomery was "totally honest and trustworthy *and to be admired*." (Emphasis supplied.) After procuring a bench conference, the State argued that the defense had placed Montgomery's general good character in issue and that the State should be permitted to cross-examine the witness about Montgomery's criminal history. The trial court denied the State's request but cautioned defense counsel:

And the statement that he was admired although very dangerous was incidental, unintended, not elicited. So I'll just tell the Defense you better be real careful what you elicit because it's not going to take much more for me to buy the State's argument that you all are getting into overall good character.

After the warning from the trial court, the defense called eight additional character witnesses who testified as to Montgomery's reputation for honesty and their opinion that he was honest. However, one of those witnesses who knew Montgomery from church and work went further and testified as follows:

> Q: And are you familiar with his reputation with regards to veracity, honesty and truthfulness within that community?
> A: I am.
> Q: And what is his reputation with regards to honesty, truthfulness and veracity within that community?
> A: He's an honest man.
> Q: And during the ten plus years that you've known him, have you formed an opinion with regards to Mr. Montgomery's honesty, truthfulness and veracity?
> A: Yes.
> Q: And what is your opinion of Mr. Montgomery's honesty, truthfulness and veracity?
> A: *He's a man of integrity*.
> Q: Okay. What is your opinion with regards to his honesty –

(Emphasis supplied.) At that point, the State again obtained a bench conference and then argued that the witness's testimony that Montgomery was a "man of integrity" placed his general good character in issue and that the State should be permitted to cross-examine the witness about Montgomery's prior arrests and convictions. The trial court granted the State's request, noting that the court had warned defense counsel about opening the door to general character evidence when one of the

12

character witnesses said that Montgomery was admired, but counsel "kept calling witness after witness after witness. And then you had one say that he's a man of integrity. And I think the line has been crossed at this point." The State thereafter cross-examined the witness by asking whether he knew or had heard that Montgomery had prior convictions for a drug offense and for driving under the influence ("DUI"), a prior arrest for DUI that resulted in a conviction for reckless driving, and a prior arrest for a drug offense. The witness testified that he knew about some of Montgomery's prior arrests and still believed that he was a man of integrity despite his prior arrests and convictions.

Subsequently, during closing argument, defense counsel emphasized that one of the character witnesses described Montgomery as a "man of integrity," and that people with integrity "tell the truth." Defense counsel also stated that the defense had called the character witnesses "because they tell you what their impression of this man is."

During the hearing on Montgomery's motion for new trial, his lead trial counsel testified that the primary theory of the defense was based on credibility and was aimed at convincing the jury that Montgomery was more credible than the victim. Counsel further testified:

Q: Did you intend to open the door to [Montgomery's] general good character?

A: Not necessarily general good character. I think when we had the many number of witnesses that we had in this case, character witnesses, there was no way not to open up his character because that is essentially kind of a pillar of our defense.

Q: And was that character for truthfulness or general good character that you thought you were opening the door to?

A: It was essentially for good character. As can be expected with lay witnesses they ventured off, you know, the particularized questions you might ask them because they're not professional witnesses. They often times either go into general good character for [Montgomery], particularized good character, and I guess in situations where they had dealings with him.

And so the answer is, yes, we did, we wanted to stay there but it's hard to do when you have lay witnesses testifying.

Q: Okay. So you knew it was possible that the door could be opened to his good character?

A: That's correct. That's correct.

Q: But necessarily you were trying to keep it to character for truthfulness if you could?

A: That was what we were trying to do, yes.

Lead counsel also testified that he wanted the jury "to know as much about [Montgomery] as they could," and that

the witnesses that we brought forth, we attempted to show that he had been essentially an upstanding person in their eyes, in their dealings with him and that's what we tried to get out. So we were trying to bolster his credibility of what happened that day.

In its order denying Montgomery's motion for new trial, the trial court summarized what had transpired at trial and noted defense counsel's trial strategy.

14

The trial court found that "prior to its ruling that permitted the State to cross-examine [the character witness] about the Defendant's criminal history, the Defense had intentionally put the Defendant's general good character in issue, thereby opening the door to evidence of his bad character."

In light of the aforementioned record, we discern no error by the trial court. Although defense counsel may not have specifically aimed at eliciting the character witness's testimony that Montgomery was a "man of integrity," defense counsel did not object or move to strike the testimony as nonresponsive, and, in fact, it was the defense trial strategy to call multiple character witnesses with the understanding that as lay persons, they would most likely give nonresponsive answers reflective of Montgomery's general character. As defense counsel explained, "there was no way not to open up his character because that is essentially kind of a pillar of our defense," which was centered on proving that Montgomery was more credible than the victim and in having the jury see that Montgomery "had been essentially an upstanding person in [the character witnesses'] eyes." Indeed, even after defense counsel was warned that continuing to call character witnesses would likely lead to a finding that the defense had opened the door to general character evidence, the defense called eight more character witnesses, including the witness who referred to Montgomery

15

as a "man of integrity." Under these circumstances, we cannot say that the trial court abused its discretion in finding that the defense intentionally placed Montgomery's general character in issue and thus triggered the State's right to cross-examine the character witness about Montgomery's criminal history. See *Harris*, 330 Ga. App. at 271-272 (1) (trial court did not err in finding that defense intentionally opened the door to character evidence, where witness testified that defendant was one of the "nicest people"; "although counsel's question to [the witness] may not have been specifically aimed at eliciting character evidence," counsel's overall trial strategy reflected "that counsel intended to inject character evidence into the trial" through use of nonresponsive, rambling witness).

2. Montgomery argues that the trial court committed plain error in its instruction that it gave to the jury on character evidence.[4]

To establish plain error, a four-pronged test must be satisfied:

First, there must be an error or defect – some sort of deviation from a legal rule – that has not been intentionally relinquished or abandoned, i.e., affirmatively waived, by the appellant. Second, the legal error must be clear or obvious, rather than subject to reasonable dispute. Third, the

---

[4] Because Montgomery failed to object to the trial court's instruction on character evidence, he must prove plain error. See *State v. Newman*, __ Ga. __ (2) (a) (Case No. S19A0374, decided April 29, 2019).

16

error must have affected the appellant's substantial rights, which in the ordinary case means he must demonstrate that it affected the outcome of the trial court proceedings. Fourth and finally, if the above three prongs are satisfied, the appellate court has the discretion to remedy the error – discretion which ought to be exercised only if the error seriously affects the fairness, integrity or public reputation of judicial proceedings. . . . Satisfying all four prongs of this standard is difficult, as it should be.

(Citations, punctuation, and emphasis omitted.) *State v. Kelly*, 290 Ga. 29, 33 (2) (a) (718 SE2d 232) (2011). See also OCGA § 17-8-58 (b).

In the present case, during the charge to the jury, at the request of defense counsel, the trial court gave an instruction on the character of the defendant for truthfulness:

You have heard evidence of the character of the defendant for a particular trait, more specifically truthfulness, in an effort to show that the defendant likely acted in keeping with such trait at pertinent times or with reference to issues in this case. The evidence has been offered in the form of opinion of other witnesses and reputation evidence. You should consider any such evidence along with all the other evidence in deciding whether or not you have a reasonable doubt about the guilt of the defendant.

17

The charge tracked the language of Georgia Suggested Pattern Jury Charge 1.37.10 and was tailored to include a reference to the defendant's character trait of truthfulness, referred to by multiple character witnesses called by Montgomery at trial.[5] Our Supreme Court has recently held in several cases that an instruction on a defendant's good character or pertinent character trait that tracks the current version of the pattern charge does not constitute plain error. See *Jackson v. State*, __ Ga. __ (2) (b) (825 SE2d 188, 194) (2019); *Parker v. State*, __ Ga. __ (2) (823 SE2d 313,

---

[5] Georgia Suggested Pattern Jury Charge 1.37.10 provides:

You have heard evidence of the (character of the defendant) (character of the defendant for a particular trait, more specifically ____) in an effort to show that the defendant likely acted in keeping with such character or trait at pertinent times or with reference to issues in this case. This evidence has been offered in the form of (opinion of (an)other witnesse(s)), (reputation) (specific instances of conduct of the defendant showing such trait). You should consider any such evidence along with all the other evidence in deciding whether or not you have a reasonable doubt about the guilt of the defendant.

Suggested Pattern Jury Instructions, Volume II: Criminal Cases § 1.37.10. The pattern charge includes the following note:

The committee feels the above charge is complete and adequate for the principle of Good Character. However, in view of *State v. Hobbs*, 288 Ga. 551 (pre-new evidence code), in order to be safe, consider adding the following: (Good character is not just a witness credibility issue, nor is it an excuse for crime. However, you may consider it as weighing on the issue of whether or not the defendant is guilty of the charges in the indictment.)

Id.

18

317) (2019); *Williams v. State*, 304 Ga. 455, 458-459 (3) (818 SE2d 653) (2018). While Montgomery argues that the pattern charge is inadequate in the context of this case because it does not include language that he asserts is required by *State v. Hobbs*, 288 Ga. 551, 552-553 (705 SE2d 147) (2010), our Supreme Court has rejected that argument, noting that "nothing in *Hobbs* suggests that it is error to give the current version of the pattern jury charge on good character." *Williams*, 304 Ga. at 459 (3). See *Parker*, __ Ga. at __ (2).

Montgomery argues, however, that the trial court's instruction on character evidence was plainly erroneous because it only made reference to the particular character trait of truthfulness. According to Montgomery, because the trial court found during the course of the trial that the defense had opened the door to evidence of his general good character, the court should have further instructed the jury on how it ought to consider evidence of a defendant's general good character. In essence, Montgomery contends that the trial court's jury instruction should have been expanded to read: "You have heard evidence *of the character of the defendant* and the character of the defendant for truthfulness . . . ."

We discern no plain error under the circumstances here. Pretermitting whether the jury instruction on character evidence should have included a reference to the

19

general character of the defendant once Montgomery opened the door to such evidence and whether defense counsel induced the alleged error by requesting the instruction that was given, we conclude that Montgomery "cannot affirmatively show that the alleged error probably did affect the outcome below." (Citation and punctuation omitted.) *Gates v. State*, 298 Ga. 324, 328 (3) (781 SE2d 772) (2016). Given that the character instruction given by the trial court fully and adequately explained to the jury how it ought to consider Montgomery's character trait of truthfulness, Montgomery has failed to show that simply adding a reference to his general character would have likely affected the outcome of the trial court proceedings. See generally *Leeks v. State*, 296 Ga. 515, 521 (4) (769 SE2d 296) (2015) (no plain error where jury charge "substantially covers the correct principles of law").

3. In a related enumeration of error, Montgomery contends that his trial counsel rendered ineffective assistance (a) by failing to request that the jury be instructed on how it ought to consider evidence of defendant's general good character in addition to evidence of the defendant's particular character trait of truthfulness and (b) by failing to object to the trial court's failure to give such an instruction. "But the test for harm under plain error review is equivalent to the test in ineffective assistance of

counsel cases for whether an attorney's deficient performance has resulted in prejudice of constitutional proportions." (Citation and punctuation omitted.) *Williams*, 304 Ga. at 460 (3), n. 4. Consequently, Montgomery's ineffective assistance claim fails. See id.

*Judgment affirmed. Mercier and Brown, JJ., concur.*