**FIFTH DIVISION**
**MCFADDEN, C. J.,**
**MCMILLIAN, P. J. and GOSS, J.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**July 1, 2019**

# In the Court of Appeals of Georgia

A19A0758. BLACKWELL v. THE STATE.

McFADDEN, Chief Judge.

After a jury trial, Chris A. Blackwell was convicted of armed robbery, of multiple counts of aggravated assault, of making terroristic threats, and of possession of a firearm during the commission of a felony. Among other claims, Blackwell argues that the trial court erred in allowing the state to present character evidence in the form of his prior arrest for armed robbery. We agree that this was harmful error, so we reverse. Because the evidence authorized Blackwell's convictions, he may be retried. We do not reach Blackwell's other claims of error.

1. *Facts*.

Viewed in the light most favorable to the judgment, see *Garza v. State*, 347 Ga. App. 335 (1) (819 SE2d 497) (2018), the trial evidence showed that Blackwell, along

with several other people, planned and executed the robbery of a bank in Carrollton during the afternoon of April 29, 2013. That day, Blackwell, Jonathan Irving,[1] Gibran Ezell, and one other man (who was not named at trial) drove in two cars from Atlanta to Carrollton. There, Ezell and the other man got into one car and drove to the bank. Inside the bank, Ezell shot a gun into the ceiling before pointing it at the numerous bank customers and employees who were present. The other man jumped over the teller counter and took approximately $14,000 in cash. During the robbery, the men demanded money, yelled profanities, and threatened to shoot the people inside the bank, frightening them. After leaving the bank, the men drove to a nearby road, abandoned their car, rejoined Blackwell and Irving, and returned to Atlanta.

The investigation of the bank robbery led law enforcement to arrest Ezell, who ultimately gave a statement implicating Blackwell and described Blackwell's involvement in the robbery at trial. Other trial evidence corroborated Ezell's testimony. Investigators found Blackwell's fingerprint inside the car that Ezell and the other man had abandoned near the bank. That car had been stolen two days before the bank robbery. In addition, Blackwell's former girlfriend testified to an instance

---

[1] Jonathan Irving was Blackwell's co-defendant at a joint trial. Irving was also convicted of several offenses and has appealed, but his appeal was docketed in a later term and will be decided in a separate opinion.

where Blackwell had borrowed her car in exchange for a Dodge Charger. Her testimony was consistent with Ezell's description of a car swap the morning of the bank robbery.

Blackwell does not challenge the sufficiency of the evidence supporting his convictions, and we find that this evidence authorized his convictions. See OCGA § 16-5-21 (aggravated assault), § 16-8-41 (armed robbery), § 16-11-37 (terroristic threats), § 16-11-106 (possession of firearm). See also OCGA § 16-2-20 (a) ("Every person concerned in the commission of a crime is a party thereto and may be charged with and convicted of commission of the crime."). So the state may retry him on remand. See *Frazier v. State*, 339 Ga. App. 405, 413 (5) (793 SE2d 580) (2016).

2. *Admission of character evidence*.

Blackwell testified at trial, and during his cross-examination the prosecutor asked him about a prior arrest for armed robbery. Blackwell's counsel objected and moved for a mistrial, but the trial court ruled that the state could elicit that evidence under OCGA § 24-4-404 (a) (1) ("Rule 404 (a) (1)"). (The state emphasized that it did not seek admission of the evidence as a prior bad act under OCGA § 24-4-404 (b).) We review the trial court's decision for abuse of discretion, *Ramirez v. State*, 303 Ga. 232, 235 (II) (811 SE2d 416) (2018), and because Rule 404 (a) (1) is materially

3

identical to Federal Rule of Evidence 404 (a) (2) (A), we apply federal case law and Georgia case law decided under our new Evidence Code, rather than Georgia case law decided under our former Evidence Code. *State v. Almanza*, 304 Ga. 553, 556 (2) (820 SE2d 1) (2018). Considering that authority, we agree with Blackwell that the trial court's ruling was error and that the error was harmful, requiring us to reverse the judgment.

(a) *Error.*

Rule 404 of our new Evidence Code, like its federal counterpart, embodies "the fundamental rule . . . that the government may not rely on the accused's bad character to win a conviction unless character has been put in issue by the defense." *United States v. LeQuire*, 943 F2d 1554, 1570 (VII) (C) (11th Cir. 1991) (citation and punctuation omitted). Generally, "[e]vidence of a person's character or a trait of character shall not be admissible for the purpose of proving action in conformity therewith on a particular occasion[.]" OCGA § 24-4-404 (a). See *United States v. Rutgerson*, 822 F3d 1223, 1239 (IV) (11th Cir. 2016). But Rule 404 (a) (1) provides an exception to that general rule: "Evidence of a pertinent trait of character [may be] offered by an accused or by the prosecution to rebut the same[.]" OCGA § 24-4-404 (a) (1). This exception permits the admission of prior bad act evidence, that would not

be admissible otherwise, "after the opposing party has 'opened the door' to its admission.'" *United States v. Birchette*, 908 F3d 50, 61 (III) (B) (4th Cir. 2018). Proof of good character is that evidence "introduced by a defendant to show circumstantially that he is unlikely to have committed the crime for which he is accused[.]"). *United States v. Thomas*, 676 F2d 531, 537 (III) (11th Cir. 1982). If a defendant introduces evidence of "pertinent" — meaning relevant — character traits, he "open[s] the door to cross-examination and rebuttal on those traits." *United States v. Hewitt*, 634 F2d 277, 278-279 (5th Cir. 1981).

The state has substantial latitude in this regard. *United States v. Bah*, 574 F3d 106, 118 (III) (2d Cir. 2009). Nevertheless, prosecutorial use of character evidence under this exception is "limited to instances that are relevant to the traits of character about which the witnesses have testified." *United States v. Coumaris*, 399 F3d 343, 348 (II) (A) (D.C. Cir. 2005). "[T]he new evidence must be reasonably tailored to rebut the original evidence," *Birchette*, 908 F3d at 61 (III) (B) (citation and punctuation omitted), and its relevance "is to be determined with reference to the characteristics of the proffered trait and the elements of the charged offense." *United States v. Williams*, 2014 U. S. Dist. LEXIS 199704, *3 (I) (B) (SD Ga. 2014) (citing *Hewitt*, 634 F2d at 279). See *Montgomery v. State*, __ Ga. App. __, __ (1) (__ SE2d

__) (Case No. A19A1353, decided May 24, 2019) (rebuttal evidence under Rule 404 (a) (1) is limited to specific instances of defendant's conduct relevant to character trait offered by defendant).

The state makes two different arguments that evidence of Blackwell's prior arrest for armed robbery was admissible to rebut purported character evidence offered by Blackwell. As detailed below, neither has merit.

(i) *Claim that evidence rebutted Blackwell's mention of being a mentor.*

The trial court found, and the state argues on appeal, that evidence of Blackwell's prior arrest for armed robbery was admissible under Rule 404 (a) (1) to rebut his testimony that he mentored children. But Blackwell did not offer this testimony to establish a pertinent trait of character that would allow for rebuttal evidence. And even if Blackwell's testimony did open the door under Rule 404 (a) (1), the evidence of his prior arrest was not reasonably tailored to rebut that evidence.

For the Rule 404 (a) (1) exception to apply, a defendant "must *choose* to place his good character in issue. . . ." *Montgomery*, __ Ga. App. at __ (1) (emphasis supplied). See generally *Michelson v. United States*, 335 U. S. 469, 477 (69 SCt 213, 93 LE 168) (1948) (describing act of defendant "elect[ing] to initiate a character inquiry"); *United States v. Lewis*, 482 F2d 632, 637 (II) (D.C. Cir. 1973) (referring

6

to election by defendant to advance evidence of one or more character traits as evidence of innocence). "[P]rosecutors should not be allowed to go into matters of character if the defendant presents background facts briefly and simply, painting an ordinary picture of a life in being. On the other hand, prosecutors certainly should be able to answer any inference suggested by the defendant that he is not the kind of person who would do the acts . . . charged. . . ." 1 Christopher B. Mueller et al., Federal Evidence § 4:24 (4th ed. updated June 2019). The record shows that Blackwell's comments about mentoring fall into the former category rather than the latter, because he only briefly mentioned being a mentor and that he did so in the context of discussing specific facts developed in the state's case in chief that did not pertain to any character trait.

In its case in chief, the state developed evidence about a connection between Blackwell and the car in which the gun used in the bank robbery was found. That car — a Dodge Charger — was involved in a high-speed chase the day after the robbery. The state presented circumstantial evidence that two men were in the car during that chase: co-defendant Jonathan Irving and a man named Chris Snelson. This evidence was circumstantial because the men in the car had fled from it on foot and were

7

apprehended several hours later. Law enforcement officers found the gun from the bank robbery during a subsequent search of the Dodge Charger.

To connect Blackwell with the Dodge Charger, the state presented testimony from Blackwell's former girlfriend, who described an instance where Blackwell had asked to borrow her car and had left with her a Dodge Charger. As stated above, this testimony corroborated the testimony of the accomplice, Ezell, who described a swap of cars on the morning of the bank robbery. Blackwell tried to explain the car swap in his testimony, and his mentions of being a mentor were embedded within this explanation.

On direct examination, Blackwell's counsel asked him about the Dodge Charger: "And in April 2013, you know [the former girlfriend] testified that you came to her job and got her vehicle and left a Dodge Charger; is that correct?" Blackwell responded, "I'm not sure if it was in April, but I have came to her job before and gave her a Charger for a Taurus because I didn't feel like putting so much gas in the car and I had to go pick up the little guy that I was mentoring."

On cross-examination, the prosecutor raised this issue again, asking Blackwell, "[Y]ou would borrow a car [from the former girlfriend] and then what, ride around?"

8

Blackwell responded, "Either I would be at her grandmother house or I would be with, you know, the little guys that I mentor or I would probably be at the church."

These are the only references to mentoring in Blackwell's testimony. Neither his counsel nor the state questioned him about the references or attempted to tie his mentoring to any character trait. So the references did not open the door to rebuttal evidence from the state under Rule 404 (a) (1). Cf. *United States v. Mendoza-Prado*, 314 F3d 1099 (C) (2) (9th Cir. 2002) (testimony of defendant, charged with drug crimes, that he "was 'not interested in narcotics and stuff' because he was 'a family man'" and that he "worked hard as the sole provider for his family" and "'was afraid to get involved in some drugs'" opened the door to evidence that he had committed various uncharged crimes); *United States v. Bruguier*, 161 F3d 1145, 1148-1150 (II) (8th Cir. 1998) (testimony of witness that defendant was a "good father" concerned pertinent character trait in case involving child abuse and permitted rebuttal evidence that defendant had previously been found a neglectful parent).

But even if Blackwell's brief references to being a mentor did open the door to rebuttal testimony under Rule 404 (a) (1), the evidence of Blackwell's prior arrest for armed robbery was not tailored to rebut evidence of any pertinent character trait offered by Blackwell's testimony. We cannot discern what trait that testimony

evidenced. The state has not identified, below or on appeal, any pertinent character trait associated with Blackwell's mentoring. It is not apparent — if Blackwell's mentoring reflected any trait of his character at all — whether any such trait was pertinent to the charges against him, or whether the evidence of Blackwell's armed robbery arrest was tailored to rebut the character trait evidence. Cf. *United States v. Bonner*, 302 F3d 776, 781-782 (II) (B) (7th Cir. 2002) (defense's introduction of evidence of his honesty and generosity, in case involving allegation that he had swindled a widow out of her government benefit payments, opened door for state to present evidence that defendant's long-term acquaintance did not view him as generous); *United States v. Green*, 180 F3d 216, 223-224 (II) (B) (2) (5th Cir. 1999) (in case where defendant police officer was charged with harboring a fugitive and drug trafficking, trial court did not abuse discretion in allowing state to rebut testimony from other police officers that defendant was their mentor and a "good cop" with evidence that others in the community disagreed with that assessment). As such, it was error for the trial court to admit the prior-arrest evidence to rebut Blackwell's comments that he mentored kids.

(ii) *Claim that evidence rebutted points raised in and inferences drawn from Ezell's testimony.*

10

Alternatively, the state argues that Blackwell opened the door to the prior-arrest evidence under Rule 404 (a) (1) through his trial counsel's cross-examination of the accomplice, Ezell. On direct examination, Ezell testified that he had heard the name Chris Snelson in connection with "this situation." (Snelson was, according to circumstantial evidence, as discussed above, in the Dodge Charger with Irving and the gun used in the bank robbery during the high-speed chase the following day.) On cross-examination, Irving's counsel elicited testimony from Ezell that Irving had discussed Snelson with him. Later on cross-examination, Blackwell's counsel asked Ezell about a prior statement in which he stated that he was afraid of "Chris." Ezell testified that Irving told him that "Chris" had been charged in the past with crimes such as "robbing and murder," but he testified that he did not know whether "Chris" referred to Blackwell or Snelson.

The state returned to this issue while cross-examining Blackwell, in a line of questioning that culminated in the state's introduction of the prior-arrest evidence:

Q. . . . [Y]ou were present when Mr. Ezell testified; is that right?

A. Yes, ma'am, I was.

Q. And he was asked by your attorney why he would have been afraid of you; do you remember that?

11

A. I guess he was talking about Chris Snelson; he wasn't talking about me.

Q. Okay. That wasn't the answer to my question. My question was, did you hear your attorney ask Mr. Ezell why he was afraid of Chris?

A. I heard that being said but for my — I thought she said Chris Snelson.

Q. You heard that Mr. Ezell was referring to you as Chris?

A. After you said my name in the indictment, yes.

Q. You heard . . . Mr. Ezell say that he was afraid of Chris — you, indicating you — because you had been — because of murder and robbery, I think is what he had said. Do you remember him answering the question that way?

A. I just remember him talking about a Chris Snelson dealing with a murder; I don't remember that he referred to me.

Q. So when he said in response to his attorney — your attorney's question, why would you be afraid of Chris, who he was indicating was you, had done some robbery and murder, part of that's true; isn't that right? About you?

A. No, ma'am.

12

Q. You've not been charged with armed robbery elsewhere?

At that point, Blackwell's counsel objected and the state responded that his counsel had opened the door to the evidence under Rule 404 (a) (1) by asking Ezell if he was afraid of "Chris."

On appeal, the state argues that Blackwell opened the door to the prior-arrest evidence under Rule 404 (a) (1) because his counsel had introduced "potentially misleading testimony" by "inserting Chris Snelson's name into Ezell's testimony and questioning his credibility." But his counsel's cross-examination of Ezell did not amount to an offer of evidence of a pertinent character trait of Blackwell; it was an attempt to establish that Ezell's statement that he was afraid of "Chris" referred to someone other than Blackwell. That was a proper topic of cross-examination and we do not see how any aspect of the above-described exchanges could be construed to permit the prior-arrest evidence under 404 (1) (a).

(b) *Harm.*

Our finding that the trial court abused his discretion in admitting the prior-arrest evidence does not end our inquiry.

> [E]ven where an abuse of discretion is shown, there are no grounds for
> reversal if the error did not affect a "substantial right," and thus harm,

13

the defendant. In determining whether the error was harmless, we review the record de novo and weigh the evidence as we would expect reasonable jurors to have done so, and we assess whether it is highly probable that the error did not contribute to the verdict.

*Venturino v. State*, __ Ga. __, __ (2) (__ SE2d __) (Case No. S19A0166, decided June 24, 2019) (citing OCGA § 24-1-103 (a); other citations and punctuation omitted). Construing the entire record, we cannot say that it is highly probable that the erroneous admission of evidence that Blackwell had a prior arrest for armed robbery did not contribute to the verdict that he was guilty of armed robbery, among other crimes.

The evidence against Blackwell was not overwhelming. None of the people in the bank during the robbery identified Blackwell as one of the robbers, and the only witness connecting Blackwell to the robbery was an accomplice, Ezell. On cross-examination, counsel for Irving and Blackwell developed evidence that while Ezell was very familiar with Irving, he was not very familiar with Blackwell: he had not known Blackwell before the bank robbery, did not know his last name until well after the bank robbery, did not know whether Irving was referring to Blackwell when he was discussing the prior criminal activities of "Chris," and in fact could not immediately identify Blackwell from the witness stand. Ezell's testimony, standing

14

alone, would not support Blackwell's conviction under OCGA § 24-14-8, which requires in felony cases corroboration of the testimony of a single witness who is an accomplice. And the evidence that corroborated Ezell's testimony did not directly connect Blackwell to the bank robbery; it merely connected him to persons or vehicles that were themselves connected to the bank robbery.

Given this less-than-overwhelming evidence, we cannot say that it is highly probable that the admission of the evidence of Blackwell's prior arrest for armed robbery did not contribute to the jury's verdict that he was guilty for, among other crimes, armed robbery. Instead, we conclude that the admission of the evidence was harmful and the judgment must be reversed. See *Sanchez-Villa v. State*, 341 Ga. App. 264, 273-274 (1) (b) (799 SE2d 364) (2017).

(3) *Remaining claims of error.*

Given our decision to reverse, we do not reach Blackwell's other claims of error, which pertain either to issues that will not or might not recur on retrial or to evidentiary rulings primarily impacting Blackwell's co-defendant, Irving.

*Judgment reversed. McMillian, P. J., and Goss, J., concur*.